[No. B103595. Second Dist., Div. Seven. Sept. 2, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY BARNES, Defendant and Appellant.

**COUNSEL**

Kyle Marie Wesendorf, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, James W. Bilderback II and Brenda G. O'Neil, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS, J.**—A jury was instructed it could convict appellant of cocaine possession (Health & Saf. Code, § 11350) if it found he had actual or

constructive possession of cocaine. We reverse the conviction because we "cannot determine from the record on which theory the ensuing general verdict of guilt rested" (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], quoted in *People* v. *Guiton* (1993) 4 Cal.4th 1116, 1122 [17 Cal.Rptr.2d 365, 847 P.2d 45]) and the constructive possession theory was legally incorrect (*Armstrong* v. *Superior Court* (1990) 217 Cal.App.3d 535 [265 Cal.Rptr. 877]).

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with possession of cocaine (Health & Saf. Code, § 11350) and having suffered three felony convictions including two "strikes" (Pen. Code, §§ 211, 667, subds. (b)-(i)). In a bifurcated proceeding a jury first convicted him of cocaine possession and then found both "strikes" true.[1] Appellant was sentenced to a 25-year-to-life state prison term.

The jury was presented two versions of what had occurred.

The prosecution version was testified to by Los Angeles Police Officer Anzaldo and his partner, Officer Zuniga.

On October 8, 1994, at 6:15 p.m. they were driving westbound on 5th Street, a one-way street, at about five miles per hour when they saw two male Blacks, appellant and another man, standing together at the corner of 5th and Crocker. When the officers were about 10 feet away they saw that appellant held a small blue vial in his left hand, between his left thumb and forefinger. Appellant's arm was at his side.

Just as the officers saw the vial, both appellant and the other man looked up, saw the officers, and appellant let go of the vial which fell to the ground. The other man immediately ran north and east and disappeared. Appellant casually walked south, away from the officers.

The officers stopped their car and exited. Officer Anzaldo recovered the blue vial and saw that it contained rock cocaine. He informed his partner who stopped and arrested appellant. Officer Zuniga searched appellant and

---

[1] The prosecutor had alleged each robbery as both a "strike" (Pen. Code, § 667, subds. (b)-(i)) and state prison prior (Pen. Code, § 667.5) but only presented proof of the "strike." The third felony prior (Health & Saf. Code, § 11355) was not presented to the jury.

in his pocket found a clear vial with seven white rocks that resembled cocaine but were not cocaine. Appellant had no money on his person.

The defense version was testified to by appellant.

Appellant testified he was a cocaine addict and about five minutes before the officers appeared he had bought $20 worth of cocaine—about six or seven "rocks"—from the Cuban at the corner of 5th and Crocker. Appellant immediately went to his street "hut," where he lived, put a rock in his pipe, lit up and discovered the rocks he had just bought were "bunk," fake cocaine. He then returned to the corner and told the Cuban, "Hey man, this ain't real man . . . give me a real rock. Give me my money back." "And at that time the police rolled up . . . . He looked up. We both looked up at the same time. He [the Cuban] seen the police, you know, and he threw something and he ran."

What the Cuban threw, appellant testified, was about the same size as what the officer recovered. The object hit him in the chest and fell to the ground. He really didn't see what it was. He walked away because he saw the police coming.

## DISCUSSION

At the prosecutor's urging[2] the trial court instructed the jury "There are two kinds of possession: actual possession and constructive possession. [¶] Actual possession requires that a person knowingly exercise direct physical control over a thing. [¶] Constructive possession does not require actual possession but does require that a person *knowingly exercise* control or *the right to control* a thing, either directly or through another person or persons." (CALJIC No. 12.00 (1989 rev.), italics added.)

The trial court also instructed the jury, "A verbal agreement or contract to purchase drugs will not, alone, establish constructive possession. The nature and terms of such purchase agreements are factors for you to consider in determining whether the defendant has exercised the requisite control over the illegal goods." (CALJIC No. 12.06 (mod.).)

In reliance upon these constructive possession instructions the prosecutor argued—in both her opening and closing arguments—that "if you believe everything the defendant says, you have him guilty of constructive possession." She told the jury, "You can take the People's case, convict the defendant. Believe the defendant's case and convict him, too."

---

[2]The prosecutor conceded the constructive possession theory was "very weak."

■ Respondent asserts "the defense evidence supported a finding of constructive possession." Respondent is mistaken.

Apposite is the leading case on constructive possession, *Armstrong v. Superior Court, supra,* 217 Cal.App.3d 535.

In *Armstrong* the defendant negotiated with an undercover officer to buy methamphetamine. Finally they agreed that defendant would give his stamp collection in exchange for one pound of methamphetamine. When the undercover officer and defendant met to make the exchange, the officer "opened the back hatch of his Blazer and [defendant] placed the box of stamps in the back of the car. [The officer] then took a one-pound bag of methamphetamine from the back of the car. As he was about to remove it from the car in order to hand it to [defendant], other officers at the scene moved in and arrested [defendant]." (217 Cal.App.3d at p. 538.)

Armstrong was charged with possession, held to answer, and when the superior court denied his dismissal motion, he sought a writ from the Court of Appeal. The Court of Appeal held Armstrong had not constructively possessed the contraband and granted the writ.

*Armstrong* stated, "For purposes of drug transactions, the terms 'control' and 'right to control' are aspects of a single overriding inquiry into when the law may punish an individual who is exercising such a degree of intentional direction over contraband that he can be justifiably and fairly punished in the same manner as if he were indeed in actual physical possession of a controlled substance. Implementation of this policy necessarily encompasses a potentially wide variety of conduct in a wide variety of settings, all directed by such factors as the alleged offender's capacity to direct the illicit goods, the manifestation of circumstances wherein it is reasonable to infer such capacity exists and the degree of direction being exercised by the accused over the contraband." (*Armstrong v. Superior Court, supra,* 217 Cal.App.3d at p. 539.)

*Armstrong* made clear that merely agreeing to buy contraband, without more, does *not* constitute constructive possession. It stated, "Likewise we reject the position that a verbal agreement or contract to purchase drugs will, alone, establish constructive possession. We have found no authority which has established constructive possession based upon a bare agreement to purchase illegal contraband. We thus conclude that in the prosecution of an individual for the offense of possession of narcotics for purposes of sale, the nature and terms of such purchase agreements are more appropriately factors in determining whether the defendant has exercised the requisite control over the illegal goods." (217 Cal.App.3d at pp. 539-540.)

The factors pertinent to constructive possession by appellant are less persuasive than in *Armstrong*. Appellant, who had been given "bunk" instead of $20 worth of rock cocaine, had no legal claim against the Cuban. When appellant demanded a "real rock" or his money back he did not have the "right to control" a blue vial he had not yet seen. When, immediately thereafter, both appellant and the Cuban saw the officers and the Cuban tossed the blue vial at appellant's chest appellant cannot be said to have "knowingly exercise[d] . . . the right to control" an object he only glimpsed in flight and made no attempt to possess or touch.

Because one or more jurors may have convicted appellant based solely upon constructive possession,[3] we cannot say the error was harmless.

### DISPOSITION

The judgment is reversed. The matter is remanded to the trial court.

Johnson, Acting P. J., and Neal, J., concurred.

A petition for a rehearing was denied September 30, 1997.

---

[3]In effect, the prosecutor assured the jury there was no need to deliberate or to decide the facts. Such an invitation—to avoid having to decide who is telling the truth and who is not—is seductive. Whether one or more jurors were seduced we cannot know, but the jury returned a verdict in sixty-one minutes.