[No. D051584. Fourth Dist., Div. One. June 23, 2008.]

In re ERIN ROTHWELL on Habeas Corpus.

COUNSEL

John P. Dwyer, under appointment by the Court of Appeal, for Petitioner Erin Rothwell.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Heather Bushman and Gregory J. Marcot, Deputy Attorneys General, for Respondent the State of California.

OPINION

IRION, J.—On petition for a writ of habeas corpus, Erin Rothwell argues that California's Department of Corrections and Rehabilitation (the Department) violated his constitutional rights when it imposed an administrative sanction against him that included the loss of 151 days of good conduct credits for possessing a controlled substance. Rothwell contends that there was insufficient evidence to support the sanction, as the substance at issue (0.14 grams of heroin concealed on a postcard addressed to Rothwell) was never in his possession, but was instead intercepted by a guard working in the prison mailroom.

As discussed below, Rothwell's contention is meritorious. Even if we accept that Rothwell requested that the heroin-tainted postcard be sent to him, the record is clear that he never *possessed* it. Thus, even under the deferential standard of review applied by courts reviewing prison disciplinary action, we must grant the requested relief. There is no evidence that Rothwell *possessed* the heroin that was sent to him and, as Rothwell was charged solely with violating a regulation prohibiting *possession* of a controlled substance, the sanction imposed violated his constitutional rights.

While we overturn the sanction in this case, we recognize that "[t]he administration of a prison . . . is 'at best an extraordinarily difficult undertaking,' " and prison administrators "must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today." (*Hudson v. Palmer* (1984) 468 U.S. 517, 527 [82 L.Ed.2d 393, 104 S.Ct. 3194]; see *In re Zepeda* (2006) 141 Cal.App.4th 1493, 1498, fn. 5 [47 Cal.Rptr.3d 172] [recognizing "the unique environment in which prison officials must accomplish 'the basic and unavoidable task of providing reasonable personal safety for guards and inmates' "].) Consequently, we emphasize the narrowness of our holding: there was insufficient evidence to sanction Rothwell for the sole violation with which he was charged—*possession* of narcotics.

## FACTS

On October 7, 2004, a correctional officer working in the mailroom of the Richard J. Donovan Correctional Facility intercepted an incoming postcard addressed to Rothwell. The postcard was, in fact, two postcards "carefully glued together." After separating the postcards, the officer observed a substance secreted between them. Upon further testing, the substance was determined to be 0.14 grams of heroin. The postcard bore a return address of "Muneca, P.O. Box 1689, Chula Vista, CA 91911."

Rothwell was charged with a "serious rules violation" for violating California Code of Regulations, title 15, section 3016, subdivision (a) (hereafter section 3016(a)).[1] A disciplinary hearing was held on January 20, 2005, at which Rothwell pled not guilty to the charge. Rothwell denied any knowledge of the postcard or its contents, and stated that he did not know anyone named Muneca. No other evidence was presented. At the conclusion of the proceeding, the hearing officer found Rothwell guilty of violating section 3016(a), based on the written report of the mailroom officer. Rothwell was assessed a forfeiture of 151 good conduct credits for a "Division 'A-2' offense"; lost 30 days of privileges, including family visits and phone privileges; and was required to undergo one year of random urinalysis testing.[2]

Rothwell appealed the finding, and a "second level review" by correctional authorities determined that the sanction was appropriate. The decision, signed by the chief deputy warden, noted that the finding of guilt was based on the fact that Rothwell's "name, CDC number, and housing" information on the postcard "were correct," and this fact, "coupled with the sophisticated way of concealing the substance, constitute[d] a preponderance of the evidence" of Rothwell's knowledge of, and participation in, the mailing of the illicit substance. (See Pen. Code, § 2932, subd. (c)(5) [stating that a "prisoner may be found guilty" of a rules violation resulting in revocation of good time credits "on the basis of a preponderance of the evidence"].) A second "Director's Level" appeal filed by Rothwell was also denied.

---

[1] The regulation provides: "Inmates may not inhale, ingest, inject, or otherwise introduce into their body; possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff." (§ 3016(a).)

[2] Forfeiture of 151 days of good conduct credit is within the range of authorized punishments for a "Division 'A-2' " offense, such as distribution of a controlled substance (Cal. Code Regs., tit. 15, § 3323, subd. (c)(7)), but exceeds the maximum punishment for a "Division 'B' " offense such as the "[u]nauthorized possession or control of any controlled substance, including marijuana, or controlled medication in an institution . . . ." (*Id.*, subd. (d)(6).) Neither party, however, raises the issue of whether the punishment imposed was lawful under the governing regulations and, as we reverse the sanction on other grounds, we need not address it.

Rothwell filed a petition for writ of habeas corpus in the superior court. After directing the Department to file an informal response, the court denied the petition. Applying the deferential standard of review that applies to court review of prison disciplinary action, the court ruled that there was "some evidence that [Rothwell] constructively possessed the heroin" based on the fact that "[o]ne can rationally infer that [Rothwell] knew the individual who mailed the heroin" and "that the substance was mailed with [Rothwell's] knowledge and consent, if not at [Rothwell's] express request." Rothwell subsequently filed a habeas corpus petition in this court.

## DISCUSSION

Rothwell contends that there was insufficient evidence to support the Department's conclusion that he possessed the heroin that was intercepted by the correctional officer stationed in the prison mailroom. We evaluate this contention after setting forth the applicable standard of review, and clarifying the rules violation with which Rothwell was charged.

### A. *Standard of Review*

A prisoner has no constitutional right to good conduct credits. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 557 [41 L.Ed.2d 935, 94 S.Ct. 2963] (*Wolff*).) Nevertheless, where as here, "the State ha[s] created the right to good time [credits] and itself recogniz[es] that its deprivation is a sanction authorized for major misconduct," a prisoner's interest in retaining good conduct credits "has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." (*Ibid.*) Consequently, before a prisoner can be deprived of good conduct credits, the state must provide: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." (*Superintendent v. Hill* (1985) 472 U.S. 445, 454 [86 L.Ed.2d 356, 105 S.Ct. 2768] (*Hill*).)

In addition, to insure that the prisoner is not arbitrarily deprived of good conduct credits, the findings of the prison authorities must be supported by "some evidence." (*Hill, supra,* 472 U.S. at p. 455.) This standard, which takes into account the unique circumstances of the prison environment, is intended to be extremely deferential, and recognizes that "[r]evocation of good time credits," while significant enough to implicate due process rights, "is not comparable to a criminal conviction." (*Hill,* at p. 456.) Ascertaining

whether the "some evidence" standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the" prison authorities. (*Hill*, at pp. 455–456; see also *In re Zepeda, supra,* 141 Cal.App.4th at p. 1498.)

Rothwell argues for a more stringent standard of review, based on Penal Code section 2932, subdivision (c)(5), which states that a "prisoner may be found guilty" of a rules violation resulting in revocation of good time credits "on the basis of a preponderance of the evidence." (See *In re Zepeda, supra,* 141 Cal.App.4th at p. 1497 [emphasizing that prisoner, like the prisoner in *Hill*, was not raising a claim under state law]; *Hill, supra,* 472 U.S. at p. 457 [emphasizing that the petitioners "relied only upon the Federal Constitution, and did not claim that the disciplinary board's findings failed to meet evidentiary standards imposed by state law"].) He contends that we should determine not whether there is " 'some evidence' " to support the disciplinary action, but whether there is " 'substantial evidence' "—the standard that applies in other contexts where courts review findings made by a preponderance of the evidence. We disagree.

While California law requires a more stringent standard of proof for prison disciplinary findings than is dictated by the federal Constitution (*Hill, supra,* 472 U.S. at p. 456), "the standard of proof on review of factual determinations of a tribunal is not a function of the standard of proof in the original proceedings before such tribunal." (*Chamberlain v. Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 371 [138 Cal.Rptr. 155]; see *Ettinger v. Board of Medical Quality Assurance* (1982) 135 Cal.App.3d 853, 858 [185 Cal.Rptr. 601]; cf. *Stromerson v. Averill* (1943) 22 Cal.2d 808, 815 [141 P.2d 732] [declining to apply more stringent standard of review on appeal for finding required to be made by clear and convincing evidence than was required for findings made by a preponderance of the evidence].) Instead, appellate review of factual findings is "governed by the degree to which it is appropriate to presume correctness of such determinations." (*Chamberlain,* at p. 371.)

As we explained in *In re Zepeda*, there are compelling reasons to conclude that the "some evidence" standard of review constitutes the appropriate level of deference (i.e., presumption of correctness) to be applied to disciplinary findings of prison authorities. (*In re Zepeda, supra,* 141 Cal.App.4th at p. 1498.) First and foremost, prison disciplinary action, even where it results in the revocation of good conduct credits, is "not comparable to a criminal conviction" (*Hill, supra,* 472 U.S. at p. 456) and, consequently, "the full panoply of rights due a defendant in such proceedings does not apply." (*Wolff,*

*supra*, 418 U.S. at p. 556.) Second, and equally significant, prison officials work in a unique environment where they must accomplish "the basic and unavoidable task of providing reasonable personal safety for guards and inmates." (*Id.* at p. 562.) Unlike any other administrative context, a prison is "a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," many of whom "are recidivists who have repeatedly employed illegal and often very violent means to attain their ends." (*Id.* at pp. 561–562.) "Guards and inmates co-exist in direct and intimate contact," "[t]ension between them is unremitting," and "[r]elationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner." (*Id.* at p. 562; see *Hill*, at p. 456.) The prison environment, thus, leaves little room for the "second-guessing" of individual disciplinary actions by courts, and the subsequent undermining of the prison officials' authority. (*Hill*, at p. 455.)

Therefore, while it is certainly appropriate for the Legislature to require *prison authorities* to employ a preponderance of the evidence standard in disciplinary proceedings, that standard itself does not alter the significant level of deference that *courts* must grant those authorities when their actions are challenged in court. Rather, whether a challenge to evidence supporting a prison disciplinary action is framed as a state law claim under Penal Code section 2932, subdivision (c)(5), or a constitutional due process claim, the same degree of deference is required, and the appropriate standard for the courts to apply is the "some evidence" standard laid down in *Hill*. (Cf. *In re Jackson* (1987) 43 Cal.3d 501, 510 [233 Cal.Rptr. 911, 731 P.2d 36] [emphasizing that the federal Supreme Court in *Hill* "held . . . that disciplinary findings need not be supported by substantial evidence, but merely 'some' or 'any' evidence" (citation omitted)]; *In re Powell* (1988) 45 Cal.3d 894, 903–904 [248 Cal.Rptr. 431, 755 P.2d 881] [relying on *Hill* in holding that given "broad discretion" due to the Board of Prison Terms, "California case law" and "due process requires only that there be some evidence to support a rescission of parole"].)

B. *The Relevant Violation Is Possessing Heroin, Not Introducing Heroin into the Prison*

According to the Rules Violation Report issued by the prison authorities, Rothwell was charged with (and convicted of) violating section "3016(a), for the specific act of introducing a controlled substance into a prison." (Capitalization omitted.) As this charge appears to encompass two separate rules violations, we must first determine the specific violation or violations with which Rothwell was charged, prior to evaluating whether there is some evidence in the record to support the prison authorities' ultimate findings.

■ Section 3016(a), the specific provision cited in the violation report, is not directed at the introduction of controlled substances into prison, but prohibits the possession of drugs in the prison setting. The regulation states: "Inmates may not inhale, ingest, inject, or otherwise introduce into their body; possess, manufacture, or have under their control any controlled substance, controlled medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff." (See also Cal. Code Regs., tit. 15, § 3323, subd. (d)(6) [characterizing narcotics possession offense as "[u]nauthorized possession or control of any controlled substance, . . . *in* an institution"] (italics added).)

A prohibition of the "introduction of controlled substances into an[] institution" (Cal. Code Regs., tit. 15, § 3000) is contained in California Code of Regulations, title 15, subdivision (c) of section 3016, which states: "Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication." California Code of Regulations, title 15, section 3000 defines "distribution" as follows: "Distribution means the sale or unlawful dispersing, by an inmate or parolee, of any controlled substance; or the solicitation of or conspiring with others in arranging for, *the introduction of controlled substances into any institution*, camp, contract health facility, or community correctional facility for the purpose of sales or distribution." (Italics added.)

As the Attorney General recognizes, Rothwell was not charged with introducing a controlled substance into the prison under California Code of Regulations, title 15, section 3016, subdivision (c). (See *Hill, supra,* 472 U.S. at p. 454 [recognizing that "advance written notice of the disciplinary charges" is required by the federal Constitution prior to the removal of an inmate's time credits]; Pen. Code, § 2932, subd. (c)(1)(A) [requiring Department to provide written notice of charge prior to deprivation of time credits and stating that the "written notice shall include the specific charge . . ."].) In fact, it does not appear from the record that a charge of *distribution* under California Code of Regulations, title 15, section 3016, subdivision (c) would have been supported by the evidence. There was no evidence that the small quantity of heroin introduced into the prison (0.14 grams) was introduced *"for the purpose* of sales or distribution" as required under that subdivision, as opposed to mere personal use. (Cal. Code Regs., tit. 15, § 3000, italics added.) Thus, we conclude, and the Attorney General does not dispute, that the language concerning the "Introduction of a Controlled Substance Into a Prison" on the charging document does not identify a

distinct offense, but is merely an explanation of the nature of the *possession* violation under section 3016(a), for which Rothwell was to be disciplined.[3]

## C. There Is No Evidence That Rothwell Possessed the Heroin

Having established that Rothwell was charged and found guilty of possessing heroin, and not for some other unspecified offense related to introducing heroin into the prison, we now turn to the question of "whether there is any evidence in the record that could support the conclusion" that Rothwell possessed heroin. (*Hill, supra,* 472 U.S. at pp. 455–456; see § 3016(a).) The Attorney General contends that constructive possession of the heroin is *necessarily* established by the evidence that suggested that Rothwell solicited someone outside the prison to mail him heroin.[4] As we will explain, this contention is without merit.

Assessing the evidence in the light most favorable to the prison officials' ruling and drawing all reasonable inferences in support of their conclusions (cf. *Hill, supra,* 472 U.S. at pp. 455–456; *In re Powell, supra,* 45 Cal.3d at p. 906), the record establishes the following: (i) Rothwell asked someone outside the prison (Muneca) to send him heroin concealed on a postcard; (ii) the person complied, preparing and mailing to him a postcard containing 0.14 grams of heroin; and (iii) the postcard was intercepted by a guard working in the prison mailroom. Under established case law, this scenario— the most inculpatory scenario supported by the record—refutes, rather than supports, the prison authorities' finding that Rothwell possessed the heroin.

 Under California law, a defendant may be deemed to have constructive possession of contraband that is in the possession of another person (e.g., Muneca) only when the person actually possessing the contraband does so "pursuant to [the defendant's] direction or permission," and the defendant "retains the right to exercise dominion or control over the property." (*People v. Showers* (1968) 68 Cal.2d 639, 644 [68 Cal.Rptr. 459, 440 P.2d 939] (*Showers*) [concluding that evidence did not support a finding of defendant's

---

[3] The Attorney General acknowledges that Rothwell was solely "charged with violating [section 3016(a)]," and that the other charging language does not identify a separate non-possession-based rules violation. The Attorney General emphasizes, however, that "the act of introducing a controlled substance into a prison *requires* either possession and/or control" and thus a finding that Rothwell introduced heroin into the prison "*necessarily implies* that he possessed the heroin, which is prohibited under . . . section 3016[(a)]." (Italics added.) As we will explain in the next part, the Attorney General's contention is inaccurate under the law of constructive possession. The Attorney General does not argue that Rothwell violated section 3016(a) in any manner other than by *possessing* heroin.

[4] It is undisputed that Rothwell never obtained *actual* possession of the heroin intercepted in the mailroom; the only question is whether there is "some evidence" in the record to support the conclusion that Rothwell had *constructive* possession of that heroin.

constructive possession of drugs that he was searching for in an ivy patch because "[d]efendant's access to the ivy patch was not exclusive nor did he maintain control over the location"]; see *People v. White* (1958) 50 Cal.2d 428, 431 [325 P.2d 985] [a defendant constructively possesses narcotics held "by any other person when the defendant has an immediate right to exercise dominion and control over the narcotic"]; *People v. Morante* (1999) 20 Cal.4th 403, 417 [84 Cal.Rptr.2d 665, 975 P.2d 1071] ["Constructive possession exists where a defendant maintains some control or right to control contraband that is in the actual possession of another."].)

As explained by Judge Richard Posner interpreting the same concept under federal law, "the essential point" in establishing constructive possession of narcotics actually possessed by someone else "is that the defendant have the ultimate control over the drugs." (*United States v. Manzella* (7th Cir. 1986) 791 F.2d 1263, 1266 (*Manzella*).) The defendant "need not have them literally in his hands or on premises that he occupies but he must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody." (*Ibid.* [holding that defendant who "knew where the cocaine was" and "arranged (at first unsuccessfully) for it to be transported to the place of sale" by another person could not be convicted of possessing the drugs because "he never had control over it"].)

Applying these principles of constructive possession, the California courts have considered, and rejected, the contention that an unsuccessful effort to obtain narcotics supports a finding of possession. In the leading case, *Armstrong v. Superior Court* (1990) 217 Cal.App.3d 535 [265 Cal.Rptr. 877] (*Armstrong*), the defendant transacted with an undercover police officer to purchase one pound of methamphetamine. The two met and the defendant, after paying for the drugs, was arrested within feet of the promised methamphetamine. (*Id.* at p. 540.) This court held that, even though the defendant exercised "control over the physical setting in which the sale was to take place," "initiated the sale process of the drugs," "agreed to meet the officer at a particular location," paid the officer, and "was prepared to take immediate physical possession of the drugs," these actions did "not demonstrate [the defendant] was exercising 'control' over the contraband itself for purposes of finding constructive possession." (*Ibid.* [directing trial court to set aside information charging possession with intent to sell methamphetamine due to absence of evidence that could support a finding of possession]; see *U.S. v. Palacios-Quinonez* (5th Cir. 2005) 431 F.3d 471, 474 ["As *Armstrong* clarifies, its holding advances the unremarkable proposition that an (uncompleted) attempt to possess is not the same as (completed) possession, actual or constructive . . . ."].)

Similarly, in *People v. Barnes* (1997) 57 Cal.App.4th 552 [67 Cal.Rptr.2d 162] (*Barnes*), the Second District rejected the contention that constructive possession of cocaine could be established where a drug seller, after receiving payment, tossed a blue vial containing cocaine towards the buyer-defendant, and the vial hit the defendant in the chest and fell to the ground (just as police arrived). (*Id.* at p. 557.) The court explained that the actions taken by the buyer in paying for and demanding cocaine did not give him the " 'right to control' a blue vial [containing the drugs] he had not yet seen," and the vial bouncing off his chest did not constitute the " 'knowing[] exercise[]' " of possession or " 'the right to control' " an object "he only glimpsed in flight and made no attempt to possess or touch." (*Ibid.*) While the defendant had made every effort to obtain cocaine, the court stressed his efforts were ultimately unsuccessful and "merely agreeing to buy contraband, without more, does *not* constitute constructive possession." (*Id.* at p. 556 [reversing conviction for possession of cocaine because prosecutor erroneously argued that defendant's own testimony supported a finding of constructive possession].)

■ *Barnes* and *Armstrong*, thus, stand for the proposition that the mere fact that a defendant has induced someone else, either by payment or out of good will, to attempt to deliver a controlled substance into his possession does not itself constitute evidence of possession of that substance. Rather, possession must be established by other evidence that the defendant, as opposed to the person who actually possessed the drugs, was in "exclusive control" of, or exercised or had the "right to exercise dominion or control" over, the illicit substance. (*Showers, supra*, 68 Cal.2d at p. 644; see *Manzella, supra*, 791 F.2d at p. 1266.)

Applying this legal principle, then, even if we assume that Rothwell (like the defendants in *Barnes* and *Armstrong*) made every effort to obtain heroin from Muneca by requesting heroin and perhaps even providing some form of payment for it, this does not constitute evidence that he *possessed* the heroin. Instead, the record establishes beyond dispute that the heroin was intercepted before it reached either Rothwell or any place that Rothwell controlled (or even had access to). Consequently, Rothwell did not, and could not, exercise any dominion or control over the heroin, and the law defining possession thus dictates a conclusion that he did not possess it.

As even the most deferential interpretation of the facts adduced at the disciplinary hearing would not support a finding that Rothwell *possessed* the heroin that was mailed to him, the disciplinary sanction imposed in this case violates due process. While there is "some evidence" that Rothwell engaged in some form of misconduct, there is *no* evidence that he possessed a controlled substance. Consequently, Rothwell's disciplinary sanction for violating section 3016(a) violated his constitutional due process rights and must

be reversed. (*Hill, supra,* 472 U.S. at p. 454 ["revocation of good time [credits] does not comport with 'the minimum requirements of procedural due process,' [citation], unless the findings of the prison disciplinary board are supported by some evidence in the record"].)[5]

## DISPOSITION

The Department of Corrections and Rehabilitation is directed to vacate the finding of guilt for violating California Code of Regulations, title 15, section 3016, subdivision (a), and restore Rothwell's lost good conduct credits.

Nares, Acting P. J., and McDonald, J., concurred.

---

[5] In a pleading styled a "response to petitioner's supplemental memorandum of points and authorities," filed on May 27, 2008, two weeks before oral argument, the Attorney General raises for the first time an argument that Rothwell's petition for habeas corpus should be denied as untimely. As the Attorney General recognizes, our January 14, 2008 order to show cause stated that, in the absence of an objection raised prior to January 23, the Attorney General's informal response would be deemed the return. Since we received no objection from the Attorney General until the May 27 filing—*four months* after the specified deadline—the informal response has been deemed the return. As the return does not include any argument as to untimeliness, the contention is forfeited. (See *People v. Duvall* (1995) 9 Cal.4th 464, 477–478 [37 Cal.Rptr.2d 259, 886 P.2d 1252] [explaining that the return and traverse "frame[] the factual issues that the court must decide" and noting requirement that "the respondent . . . raise his arguments in the return in timely fashion"]; *People v. Romero* (1994) 8 Cal.4th 728, 739 [35 Cal.Rptr.2d 270, 883 P.2d 388] ["it is through the return and the traverse that the issues are joined in a habeas corpus proceeding"].)