Filed 7/12/24  In re Ransom on Habeas Corpus CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| In re TYWAN RANSOM,<br><br>On Habeas Corpus. | C098614<br><br>(Super. Ct. No. 21HC00484) |

Tywan Ransom, an inmate in the custody of the California Department of Corrections and Rehabilitation (Department), filed a petition for a writ of habeas corpus in the superior court seeking reversal of disciplinary action imposed upon him by prison officials for committing indecent exposure in violation of prison regulations.  The superior court (hereafter habeas court) granted the relief requested, concluding prison officials violated Ransom's procedural rights, including the right to pose relevant questions to the correctional officer who reported the indecent exposure.  The Department appeals the habeas court's ruling.  We affirm.

1

BACKGROUND

One evening in January 2019 during mealtime, while Ransom was serving his 50-year-to-life sentence, correctional officers approached his cell and ordered him to submit to handcuffs because an officer on duty in the control booth reported that she saw Ransom sitting on the lower bunk in his cell, staring at her while grasping his exposed, erect penis, and moving his hand up and down.

When prison authorities formally charged Ransom with committing indecent exposure in violation of prison rules (Cal. Code Regs., tit. 15, § 3000),[1] he requested an investigation. In January 2021, Officer Madrigal submitted a report detailing the results of his investigation that began in December 2020.[2]

Pertinent here, the report explained that Ransom told Officer Madrigal he did not "deliberately and lewdly expose [his] penis" to the reporting officer, and her accusation that he did was undermined by (1) the distance from his cell to where the reporting officer was stationed and (2) the presence of metal cross beams that covered the windows. Officer Madrigal explained to Ransom that he was to be a fact finder for the hearing officer, and he would interview all requested witnesses, but would not ask questions that were "irrelevant, . . . duplicate in nature, or solicited personal opinion." Ransom asked Officer Madrigal to pose six questions to the reporting officer and 10 questions to Officer Morales, the person who gave food to Ransom and retrieved the food tray from him at the time in question. Ransom also asked Officer Madrigal that two photographs be taken to support his defense: (1) one from the control booth looking out

---

[1] Further undesignated citations are to title 15 of the California Code of Regulations.

[2] Due to procedural irregularities, the results of two earlier disciplinary hearings concerning Ransom's alleged indecent exposure were set aside and are not at issue in this appeal.

toward his cell, and (2) one from a seated position on his bunk looking toward the front of his cell.

Officer Morales's responses to the 10 questions Officer Madrigal posed reflect: (1) he did not see Ransom masturbating at any point during the 25 minutes that elapsed between his delivery of food to Ransom and retrieval of the food tray from Ransom; (2) the reporting officer told Officer Morales about Ransom's misconduct after "chow was completed"; (3) Officer Morales responded to Ransom's cell about one minute later; (4) when Officer Morales got there, Ransom was sitting on his bunk, fully clothed, and did not have an erection. The reporting officer did not respond to the six questions about the incident that Officer Morales sent to her work e-mail. Two of the questions the reporting officer did not reply to were: "Specifically, which cell window did you use as you allegedly observed Mr. Ransom masturbating inside his cell?" and "During this alleged incident, at any time did you see Mr. Ransom wearing eye glasses as you claim he was staring directly at you in the control booth?"

At the January 2021 disciplinary hearing, after pleading not guilty and stating that he could not even see the reporting officer due to his bad vision, Ransom handed the hearing officer a piece of paper with questions he wanted the hearing officer to ask the reporting officer, who was available by phone. The questions on that piece of paper were the same six questions that Officer Morales asked, and to which the reporting officer did not respond. The hearing officer refused to pose the questions to the reporting officer, explaining the questions were deemed irrelevant in a previous hearing, and were duplicative in nature and an attempt to revictimize the reporting officer. As for the photographs that Ransom asked Officer Morales for, the hearing officer "determined the . . . photos have been deemed to not have any relevance to the [alleged rule violation] and/or are a safety and security threat to the institution."

Under a preponderance of the evidence standard, the hearing officer found Ransom guilty of "Indecent Exposure without Prior Convictions for [Penal Code section] 288," explaining: "Although [Ransom] entered a plea of 'NOT GUILTY,' [the hearing officer] lends more credibility to [the reporting officer's] report and accompanying supplementary reports by staff; coupled with the available evidence. In the [hearing officer's] opinion, [Ransom's] defense is inadequate to refute the charges due to the available evidence weighing against his defense." As punishment, Ransom lost 90 days of credits toward his sentence.

In October 2021, after the Department rejected Ransom's appeal of the hearing officer's decision, Ransom filed a petition for writ of habeas corpus in the superior court, claiming (1) insufficient evidence supported the hearing officer's decision and (2) the hearing officer violated (a) his due process rights and (b) California prison regulations by refusing to ask relevant questions of the reporting officer that he proposed and preventing him from presenting photographic evidence in his defense. Among the prison regulations Ransom cited in support of his procedural claims were section 3315, subdivision (e), which concerns attendance and questioning of "friendly and adverse witnesses" at a disciplinary hearing, and section 3320, subdivision (*l*), which concerns the presentation of documentary evidence in defense or mitigation of a disciplinary charge.

The habeas court ordered the Secretary of the Department to show cause why Ransom was not entitled to habeas relief, and the Department argued in its return that Ransom received all due process he was entitled to in the January 2021 disciplinary hearing. Regarding the questions, the Department argued the hearing officer properly refused to pose "irrelevant and harassing questions of the reporting employee." "Indeed," the Department maintained, "these questions [were] harassing and duplicative, particularly as they had been asked to [the reporting employee] (through Officer Madrigal) at least once before in their entire requested language." The Department did not discuss section 3315, subdivision (e). Regarding the photographs, the Department

4

argued that "[b]ecause of . . . safety and security concern[s], the prison was not obligated to obtain th[e] two photographs" Ransom wanted. The Department did not discuss section 3320, subdivision (*l*). Last, the Department argued there was sufficient evidence for the hearing officer's finding.

In his traverse, and with the assistance of counsel for the first time, Ransom realleged the facts set forth in his habeas petition and made additional argument.

In a March 2023 order, the habeas court granted Ransom's habeas petition, ruling the hearing officer erred in concluding both that the questions Ransom proposed at the disciplinary hearing were irrelevant and that the photographs Ransom wanted were irrelevant and posed safety and security concerns. This was so, the habeas court ruled, because under the case law, one must act with the intent to direct public attention to one's genitals for the purpose of sexual arousal to be found guilty of indecent exposure under Penal Code section 314. That Ransom "was masturbating in his cell does not resolve the question," the habeas court reasoned. Whether the reporting officer could observe Ransom, and whether Ransom could observe her, were questions that were relevant to whether Ransom acted with intent to direct public attention to his genitals. The habeas court declined to address each of the six questions individually, but reasoned that at least three of them were relevant, including the two questions quoted above regarding which cell window the reporting officer looked through when she saw Ransom masturbating inside his cell and whether she saw Ransom wearing eyeglasses during the incident.

Regarding the photographs, the habeas court reasoned it was "not clear . . . that the taking of the two photographs requested by [Ransom] or allowing the hearing officer to review the photographs would threaten the safety and security of the institution. [Ransom] did not request copies of the photographs for his personal possession, he asked that the hearing officer review them." The habeas court observed that an exhibit to Ransom's habeas petition indicated that photographs were taken and considered in a different disciplinary hearing involving a different inmate. Because the Department did

5

not address that exhibit in its return, the habeas court presumed Ransom's characterizations were accurate, and rejected the Department's "conclusory allegation" that the photographs he requested would have threatened prison security.

Because it concluded relief was warranted for the procedural violations, the habeas court declined to address the sufficiency of the evidence to support the finding Ransom committed indecent exposure. The habeas court ordered the January 2021 disciplinary adjudication vacated and directed the Department to remove records of that adjudication from Ransom's record and restore the 90 days of credits. The Department appealed in May 2023, and briefing in this court was completed in March 2024.

DISCUSSION

I

*Background Legal Principles*

A.     *Habeas Corpus Proceedings*

If a habeas corpus petition states a prima facie case on a claim that is not procedurally barred, courts may order the person who is allegedly unlawfully restraining the habeas petitioner (the "custodian") to show cause why the relief sought should not be granted. (*People v. Romero* (1994) 8 Cal.4th 728, 737.) The order to show cause " 'directs the respondent custodian to serve and file a written return.' " The return, which must allege facts establishing the legality of the situation a habeas petitioner challenges, " 'becomes the principal pleading' " and " 'is an essential part of the scheme' by which relief is granted in a habeas corpus proceeding." (*Id.* at pp. 738-739.) After the return is filed, a petitioner may deny or controvert " 'material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge.' [Citation.] The petitioner's response to the return, commonly known as the traverse, may incorporate the allegations of the petition. [Citation.] Any allegation of the return not controverted

6

by the traverse is deemed admitted. . . . Thus, it is through the return and the traverse that the issues are joined in a habeas corpus proceeding." (*Id.* at p. 739.)

Just as the petitioner's traverse must respond to material allegations in the custodian's return or risk that an allegation be deemed admitted, so must the custodian's return respond to material allegations in the habeas petition and assert all pertinent legal arguments or risk forfeiture. (See *In re Rothwell* (2008) 164 Cal.App.4th 160, 172, fn. 5 (*Rothwell*) [citing *Romero* and ruling in an original habeas proceeding that because "the return does not include any argument as to" an issue, "the contention is forfeited"]; Cal. Rules of Court, rule 4.551(d) ["Any material allegation of the petition not controverted by the return is deemed admitted for purposes of the proceeding"]; cf. *In re Fratus* (2012) 204 Cal.App.4th 1339, 1351 (*Fratus*) [citing Cal. Rules of Court, rule 4.551(d) and declining to address an untimely argument raised by the Department in an original habeas proceeding].)

It follows that any arguments forfeited in the original habeas proceedings remain forfeited in an appeal from that proceeding. It would make no sense to allow a party to raise on appeal an argument the party forfeited in the first instance. (Cf. *In re Seaton* (2004) 34 Cal.4th 193, 200 ["If a claim that was forfeited for appeal could nonetheless be raised in a habeas corpus proceeding, the main purpose of the forfeiture rule—to encourage prompt correction of trial errors and thereby avoid unnecessary retrials— would be defeated"]; *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 [argument not raised below in opposition to demurrer deemed forfeited on appeal].)[3]

---

[3] The parties had the opportunity to brief forfeiture, a rule always implicated when a party in a habeas proceeding fails to raise an argument in a traverse and/or raises an argument for the first time on appeal. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081" of the Government Code].)

7

B.    *Standard of Review*

In its opening brief, the Department asserts we should review this matter "de novo because this appeal raises questions of law based on undisputed facts." Ransom disagrees, arguing in his brief that we should review the habeas court's ruling under an abuse of discretion standard, because the facts are disputed, and the habeas court decided relevant evidence was improperly excluded from his disciplinary hearing. In its reply brief, the Department maintains we should review the habeas court's ruling de novo, but argues for the first time that we should review the propriety of the *hearing officer's* evidentiary ruling for an abuse of discretion.

We decline to address the Department's standard of review argument raised for the first time in its reply brief,[4] but we agree with the Department's position as articulated in its opening brief. The habeas court did not hold an evidentiary hearing, did not make any credibility determinations or factual findings, and did not adjudicate the question of the sufficiency of the evidence to support a finding that Ransom committed indecent exposure under prison regulations. Rather, it adjudicated the matter based on the pleadings and exhibits submitted by the parties, and the law. De novo review is proper here because we consider the applicability of the prison regulations to the undisputed

---

[4] "[A]ppellate arguments presented for the first time in a reply brief . . . are forfeited without a showing of good cause" (*Miller v. Pacific Gas & Electric Co.* (2023) 97 Cal.App.5th 1161, 1170), because addressing such arguments would be unfair to a respondent "deprive[d] [of] the opportunity to argue against the new issue" (*Water for Citizens of Weed California v. Churchwell White LLP* (2023) 88 Cal.App.5th 270, 285; cf. *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 [explaining that arguments should be tailored to the applicable standard of review and " '[f]ailure to acknowledge the proper scope of review is a concession of a lack of merit' "]). Relatedly, we note the Department did not argue for deferential review before the habeas court. Accordingly, this argument is doubly forfeited. (*Rothwell*, *supra*, 164 Cal.App.4th at p. 172, fn. 5; cf. *People v. Morales* (2020) 10 Cal.5th 76, 98 [party "doubly forfeited" an argument "by waiting until [the] reply brief to raise the issue"].)

facts of this case.  (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1496-1497 [de novo review on appeal from an order granting habeas relief where the habeas court simply evaluated the documentary record and the question presented on appeal was a question of law].)

## II

### *Source of Relief*

The Department argues Ransom's constitutional due process rights were not violated by the hearing officer.  We need not resolve that constitutional question if there has been a violation of a prisoner's rights under the prison regulations.  (*In re Marti* (2021) 69 Cal.App.5th 561, 566, fn. 1.)  Because we agree with the habeas court that Ransom's rights under prison regulations were violated, we therefore do not address whatever constitutional dimension there may be to his habeas claims.

## III

### *Applicable Regulations*

The Department argues the habeas court erred in ruling prison regulations created a right to confront and cross-examine witnesses.  We agree the habeas court's reasoning was imprecise when it cited prison regulations and declared California has "created a right to confront and cross-examine witnesses at a prison disciplinary hearing."[5]  But the habeas court correctly reasoned that prison regulations create a right to *ask relevant questions* of all witnesses who attend the disciplinary hearing.  And since the reporting

---

[5]  In *Wolff v. McDonnell* (1974) 418 U.S. 539, the high court ruled that inmates facing disciplinary proceedings (1) have a due process right to "call witnesses and present documentary evidence in defense" when not "unduly hazardous to institutional safety or correctional goals," but (2) do *not* have a due process right to confrontation and cross-examination of witnesses in prison disciplinary proceedings, because that would "present greater hazards to institutional interests."  (*Id*. at pp. 566-568.)

9

officer attended the January 2021 hearing, as mandated by prison regulations, Ransom had a right to ask her relevant questions.

A.  *Definitions*

Section 3000 "defin[es] . . . terms as used in these [prison] regulations."  Pertinent here, the provision says a person commits indecent exposure if the person:  "willfully and lewdly, either: exposes his or her person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby."  (*Ibid.*)  The provision also says relevant evidence is evidence that tends to prove or disprove an issue or fact in dispute.  (*Ibid.*)

B.  *Serious Rule Violation*

Section 3315 concerns procedures for disciplinary hearings regarding "serious rule violations," and there is no dispute that the charge of indecent exposure that Ransom faced was a serious rule violation.  (See § 3315, subd. (a)(3) [illustrative list of serious rule violations].)

An inmate "may request that friendly and adverse witnesses attend" the disciplinary hearing and those witnesses "shall be called unless the [hearing officer] denies the request for one of the following reasons:  [¶]  (A) The appearance would endanger the witness.  [¶]  (B) The [hearing officer] determines that the witness has no relevant or additional information.  [¶]  (C) The witness is unavailable."  (§ 3315, subd. (e)(1).)[6]  When the disciplinary hearing finally occurs, an inmate "has the right to ask questions of all witnesses called" subject to "screen[ing]" of all questions by the hearing

_____

[6]  If a hearing officer denies an inmate's request for a witness, the reasons shall be documented in the adjudication report.  (§ 3315, subd. (e)(2).)  And the regulation provides no grounds for excusing the attendance of the prison official who *reported* the serious rule violation.  (See *id.*, subd. (e)(4) ["The reporting employee shall attend the disciplinary hearing or be available for questioning via speakerphone if requested by the inmate"].)

10

officer "to ensure they are relevant to the violation charged." (*Id*., subd. (e)(5).) But "[n]othing . . . preclude[s]" a hearing officer from "making a witness available by speaker phone for a disciplinary hearing." (*Id.*, subd. (e)(6).)

C.      *Analysis*

Section 3315, subdivision (e) gives inmates *the right to ask relevant questio*ns *of all witnesses* attending a disciplinary hearing, whether friendly or adverse. Further, the regulation contains an *exhaustive* list of three reasons a hearing officer can refuse to call a witness[7]—including danger to the witness—but permits the hearing officer to make witnesses available only by speaker phone. As for the content of questions an inmate wants to ask, the regulation specifically contemplates screening by the hearing officer to ensure all questions are relevant to the violation charged, but does *not* explicitly contemplate screening questions for any other purpose.

This scheme does not give inmates a right to confront and cross-examine witnesses in the way those rights are commonly understood in the context of a criminal prosecution. (Cf. *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121, 1145-1146 & fn. 12 [citing and discussing case law reflecting that where testimony of a witness is crucial to the prosecution's case, it is improper to withhold information essential to a criminal defendant's ability to conduct effective cross-examination; concerns for the safety of a witness do not trump this right]; *People v. Arredondo* (2019) 8 Cal.5th 694, 707-709 [criminal defendant's right to *face-to-face* confrontation].) It is also clear that a hearing

---

[7] Requested witnesses must be called unless the hearing officer "denies the request for *one of the . . . reasons*" listed. (§ 3315, subd. (e)(1), italics added; cf. *Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [reasoning that, by writing a statute to say "that 'in no event' shall" a period of time "be tolled except under those circumstances specified in the statute," the Legislature "expressly intended to disallow tolling under any circumstances not enumerated in the statute"].)

officer may not refuse to pose a relevant question to a witness attending a disciplinary hearing for a serious rule violation.

Accordingly, the argument in the Department's briefing that judicial deference is owed to its interpretation of section 3315, subdivision (e) as contemplating the screening of inmate questions for reasons besides relevancy would be unpersuasive if we were to consider the merits. (Cf. *In re Marti*, *supra*, 69 Cal.App.5th at p. 570 [rejecting in an original habeas proceeding an argument for deference to the Department's interpretation of prison regulations "as within its special expertise," because there was "nothing that would cause [the appellate court] to depart from [its] reasonable interpretation" of "the plain language of the regulation as applied in the . . . matter"]; *Wiseman Park, LLC v. Southern Glazer's Wine & Spirits, LLC* (2017) 16 Cal.App.5th 110, 118, fn. 9 [agency interpretation of a statute is entitled to "little, if any, weight" if it was "prepared for litigation"].) But we do not consider the merits because the Department did not raise this argument in its return. (See *Rothwell*, *supra*, 164 Cal.App.4th at p. 172, fn. 5.)

IV

*Mental State for Indecent Exposure & Proposed Questions*

The Department argues the definition of indecent exposure in section 3000 requires "only that the inmate exposed himself in a place where others are present." But even if the habeas court was correct that the relevant question is whether Ransom intended to draw public attention to his genitals, the Department continues, "none of Ransom's proposed questions would have shed additional light on the ultimate question—whether Ransom was masturbating in his cell at a time where others could see him." If he was, the Department continues, "the logical conclusion of this act was Ransom intended to expose himself generally to anyone in the building who could see."

12

The Department's contentions are unpersuasive in light of both the rulemaking history and the case law.

A.     *Rulemaking History*[8]

In early 2007, the Department issued a notice of adoption of emergency regulations in order to address inmate indecent exposure.  (Cal. Reg. Notice Register 2007, No. 10-Z, pp. 444-447.)  Prison regulations did not define indecent exposure at the time.  (See Cal. Code. Regs., tit. 15, former § 3000, Register 2006, No. 49 (Dec. 8, 2006).)  The Department explained in the notice that it sought to adopt the provisions due to a federal court decision:  Judge Thelton Henderson had "stressed" the need for immediate implementation of the Department plans "to reduce inmate sexual misconduct incidents at all institutions."  (Cal. Reg. Notice Register 2007, No. 10-Z, p. 446.)

In its final statement of reasons for adopting the current definition of indecent exposure (provided in relevant part above), the Department explained that "[*Penal Code*] *Section 314 is the basis for the Indecent Exposure definition*.  It is necessary for this language to be placed in the [California Code of Regulations] for clarity and ease of understanding for correctional staff for expedited reference and an explanation specific to inmate behavior regarding indecent exposure."  (Department, Indecent Exposure Final Statement of Reasons (July 19, 2007) p. 2, italics added.)

B.     *Penal Code Section 314 and Case Law*

Penal Code section 314 provides, in relevant part that "[e]very person who willfully and lewdly" "[e]xposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby" is guilty of a misdemeanor.  But "upon a first conviction" for such conduct

---

[8]  On our own motion, we take judicial notice of the rulemaking history.  (Evid. Code, §§ 452, subd. (c), 459; see *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088.)

"after a previous conviction under [Penal Code] Section 288, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison." (*Ibid.*)

As the habeas court correctly noted, case law interpreting Penal Code section 314 has long stood for the proposition that the mental state necessary for a conviction under the statute is an intent "to direct public attention to [one's] genitals for purposes of sexual arousal, gratification, or affront." (*In re Smith* (1972) 7 Cal.3d 362, 366, fn. omitted; *ibid.* ["a person does not expose his private parts 'lewdly' within the meaning of [Penal Code] section 314 unless" "the actor not only meant to expose himself, but intended by his conduct to direct public attention to his genitals for purposes of sexual arousal, gratification, or affront" (fn. omitted)].)[9]

C.      *Analysis*

Because Penal Code section 314 defines indecent exposure for purposes of section 3000 of the California Code of Regulations, Ransom committed indecent exposure in January 2019 *if* he exposed his penis with the intent to direct public attention to it for the purpose of sexual arousal or affront. As the habeas court correctly reasoned, the act of masturbating in a prison cell, by itself, does not establish such intent. (See *People v. Honan* (2010) 186 Cal.App.4th 175, 181-182 [the "nature of the specific intent required for indecent sexposure" requires "a purposeful and aggressive sexual display designed to provoke others," in contrast to merely *ignoring* "the risk of being seen and act[ing] *despite* the presence of others" (italics added)].) And we agree with the habeas court that Ransom's questions regarding which cell window the reporting officer looked through when she saw him masturbating inside his cell and whether she saw him wearing

---

[9] Rules of statutory construction also generally govern interpretation of administrative regulations. (*In re Gomez* (2016) 246 Cal.App.4th 1082, 1096.) Accordingly, we presume the Department "know[s] about existing case law when it enacts or amends" a regulation. (*In re W.B.* (2012) 55 Cal.4th 30, 57.)

eyeglasses during the incident were relevant and probative. If Ransom could not see the reporting officer and/or was unaware she could see his penis while he masturbated, the notion he sought to provoke her is weakened.[10]

Accordingly, the hearing officer violated Ransom's rights under prison regulations by refusing to pose relevant questions to the reporting officer. (See *Fratus*, *supra*, 204 Cal.App.4th at pp. 1350-1351 [a hearing officer's "assertion that [a witness] had no relevant information was not accurate," and the hearing officer's refusal to allow the inmate to ask more than one question of prison officers was a violation of subdivision (e)(5) of section 3315].)

V

*Photographs*

The Department contends the habeas court erred in ruling Ransom was entitled to have photographs taken, because prison regulations do not contemplate a duty on the Department's part to *create* evidence that an inmate seeks to use in defense of a serious rule violation charge. This argument is forfeited because the Department did not make it in its return (*Rothwell*, *supra*, 164 Cal.App.4th at p. 172, fn. 5), wherein it argued only that "[b]ecause of . . . safety and security concern[s], the prison was not obligated to obtain" the photographs Ransom requested.[11] The habeas court found that argument

---

[10] Any suggestion in the Department's reply brief that the hearing officer properly declined to pose Ransom's proposed questions to the reporting officer because she had already *answered* those questions during an investigation of the January 2019 incident is doubly forfeited because the Department did not present this argument either in the habeas court or in its opening brief. (See *Rothwell*, *supra*, 164 Cal.App.4th at p. 172, fn. 5; *People v. Morales*, *supra*, 10 Cal.5th at p. 98.) Further, we note the record does not support the notion the reporting officer answered all relevant questions Ransom sought to pose to her at the January 2021 hearing.

[11] Even if we were to consider this argument on the merits and find it convincing, we would conclude that Ransom is still entitled to relief because of the hearing officer's refusal to pose Ransom's relevant questions to the reporting officer.

15

"conclusory" in light of the uncontested suggestion in Ransom's habeas petition that photographic evidence was introduced in a different disciplinary matter concerning a different inmate.

The Department provides one paragraph of argument in its opening brief regarding the hearing officer's "safety and security threat" reason for refusing to procure the photographs, contending: "that [the hearing officer] provided the reason at the hearing was enough." For support, the Department cites the United States Supreme Court's holding that federal due process principles are satisfied if prison officials explain "in a limited manner, the reason why witnesses were not allowed to testify," "so long as the reasons are logically related to preventing undue hazards to 'institutional safety or correctional goals.' " (*Ponte v. Real* (1985) 471 U.S. 491, 497.)

There are at least two problems with this argument. First, it relies on federal constitutional law, whereas we are here concerned with the rights of inmates under California's prison regulations. Second, we think the "limited manner" of explanation the United States Supreme Court had in mind in *Ponte v. Real* requires something more than just saying the words "safety and security threat."

VI

*Other Issues*

A.    *Sufficiency of the Evidence*

The Department argues we should reverse the habeas court's ruling because sufficient evidence supported the hearing officer's guilt finding. We are not persuaded, because such an analysis would be a fundamentally flawed endeavor in this case where Ransom was precluded from presenting important evidence. (See *Fratus, supra*, 204 Cal.App.4th at pp. 1351-1352 [because an inmate was "denied his right to present his defense at the disciplinary hearing, as mandated under the due process clause and allowed under the Department's regulations, and thus denied a fair hearing, we do not know the evidence which would have come from the testimony of [another witness] or the

16

questions asked of the prison officers," making it impossible to "evaluate the sufficiency of the evidence issue at this time, or whether the failure to allow questioning of the prison officers was harmless error"]; cf. *In re Gomez*, *supra*, 246 Cal.App.4th at pp. 1098-1100 [insufficient evidence an inmate engaged in behavior that might have led to disorder endangering the facility, in part because evidence of the inmate's underlying behavior "add[ed] nothing to an inquiry into what might result from this behavior"].)

B. *Other Arguments Raised for First Time in Reply Brief*

For the first time in its reply brief, the Department invokes multiple "interests" it has that militate in favor of a reversal of the habeas court's order. We will not consider these forfeited arguments. (See *Miller v. Pacific Gas & Electric Co.*, *supra*, 97 Cal.App.5th at p. 1170; *Water for Citizens of Weed California v. Churchwell White LLP*, *supra*, 88 Cal.App.5th at p. 285.)

C. *Motion to Augment Record and Request for Judicial Notice*

After Ransom filed his responsive brief, the Department filed a motion to augment the record and request for judicial notice. The untimely motion and request are denied. (See *Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 306, fn. 3 [denying motion to augment, in part because appellant did not seek to augment the record until after respondent's brief was filed].)

17

DISPOSITION

The order granting Ransom's petition for writ of habeas corpus is affirmed.


/s/
BOULWARE EURIE, J.

We concur:


/s/
ROBIE, Acting P. J.


/s/
RENNER, J.

18