[No. D047776. Fourth Dist., Div. One. Aug. 14, 2006.]

In re RICHARD S. ZEPEDA on Habeas Corpus.

### COUNSEL

Bill Lockyer, Attorney General, James M. Humes, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Julie L. Garland and Michelle Des Jardins, Deputy Attorneys General, for Appellant.

Waldemar D. Halka, under appointment by the Court of Appeal, for Respondent.

### OPINION

IRION, J.—Richard S. Zepeda, an inmate at Calipatria State Prison, petitioned the trial court for a writ of habeas corpus seeking reversal of disciplinary action imposed upon him by prison officials for possessing a weapon in violation of prison regulations. The court granted the relief requested, concluding that the evidence introduced at Zepeda's prison disciplinary proceeding—consisting primarily of the weapon's location in a cup on a shelf accessible to both Zepeda and his cellmate—was insufficient to support a finding that Zepeda possessed the weapon. Consequently, the court ruled, Zepeda's punishment violated his rights to due process under the federal *Constitution* and must be reversed.

Stuart Ryan, warden of Calipatria State Prison[1] (the Warden) and the respondent to Zepeda's petition, appeals the trial court's ruling. The Warden contends, and we agree, that given the extraordinarily deferential standard of review that applies when a court reviews a challenge to prison disciplinary action on federal due process grounds, the trial court's ruling was erroneous.

## FACTS

On October 1, 2003, Correctional Sergeant J. Valenzuela conducted a routine search of prison cell 106, the cell jointly occupied by Zepeda and another inmate, Johnnie Valadez. During the search, Valenzuela found three razor blades, which had been removed from their plastic casing, inside a paper cup covered with a lid on top of a cement shelf. The shelf was in a common area of the cell, accessible to both inmates. The "plastic cases of the razors" were also located in the cell, although the record does not indicate exactly where in the cell they were found.

Valenzuela showed the cup to Valadez, asking, "Do you recognize this?" Valadez responded, "Yes, that's mine." Valenzuela then held up the three razor blades and asked Valadez, "Do you recognize these?" Valadez responded, "Yes, they [are] mine, I use them to sharpen my pencils." Valenzuela subsequently questioned Zepeda about the razor blades; Zepeda denied having any knowledge of them.

Disciplinary proceedings were initiated against Zepeda for violating a prison rule, California Code of Regulations, title 15, section 3006, which states that "[i]nmates may not possess or have under their control any weapons . . . ." (Cal. Code Regs., tit. 15, § 3006, subd. (a).)[2] A subsequent hearing was held at the prison. At the hearing, the evidence regarding the discovery of the razor blades was presented, as well as Valadez's claim of ownership of the cup and razor blades. In addition, under questioning from Zepeda, Sergeant Valenzuela testified that it is common for one inmate to claim responsibility for contraband found in a cell so that the other cellmate is not charged.

After hearing the evidence, the prison official presiding over the hearing concluded that Zepeda had violated California Code of Regulations, title 15, section 3006, and, as punishment, revoked 360 days of Zepeda's good

---

[1] Zepeda named "Warden Ryan," the warden of Calipatria State Prison at the time the petition was filed, as the respondent to his petition. (See Pen. Code, § 1477 [writ of habeas corpus "must be directed to the person having custody of or restraining the person on whose behalf the application is made"].)

[2] The record indicates that Valadez was also charged with violating California Code of Regulations, title 15, section 3006.

conduct credits. (See Pen. Code, § 2932, subd. (a)(1).) Zepeda appealed the decision through two levels of administrative review, and each of his appeals was denied. On March 11, 2005, Zepeda filed a petition for a writ of habeas corpus in the Superior Court of Imperial County, seeking restoration of the good conduct credits.

After reviewing the written submissions of the parties, which included the written records of the prison disciplinary proceedings, the trial court granted the relief requested. The court's order states: "While [the Warden] argues there is some evidence of constructive possession of a weapon by [Zepeda], this evidence is nothing more than that [Zepeda] shares his cell with a cellmate and is allegedly responsible for any contraband [in the] common area. Still, there must be some evidence of either exclusive possession or control. The evidence shows [Zepeda] has no control over what contraband may be in the possession of his cellmate and no evidence was presented that [Zepeda] possessed any knowledge of the weapon in question."

As a consequence of its ruling, the court ordered Zepeda's "privileges, time credits, and any other lost benefits as a result of the finding of guilt . . . restored and the disciplinary finding against him . . . removed f[ro]m his file." The Warden appeals.

## DISCUSSION

The Warden contends that the trial court's ruling was erroneous given the standard of review that applies when a court examines disciplinary action taken by prison officials for compliance with the dictates of federal constitutional due process. We review the Warden's contention below after setting forth the legal principles that guide our determination.

### I

*The Applicable Standard of Review of the Trial Court's Ruling Is De Novo*

The parties dispute the standard of review that applies to the trial court's ruling. Emphasizing "the usual rule, that 'evidence must be taken most strongly in support of the order appealed from' " (*In re Garcia* (1977) 67 Cal.App.3d 60, 65 [136 Cal.Rptr. 461] (*Garcia*)), Zepeda contends we must review the trial court's order deferentially, viewing the record in the light most favorable to the court's ruling. The Attorney General disputes this, arguing that because the trial court held no evidentiary hearing and made no factual findings, the appropriate standard of review is de novo. We agree with the Attorney General.

In a habeas corpus proceeding, once the issues have been properly joined, the court may grant (or deny) the relief sought without ordering an evidentiary hearing as long as resolution of the petition does not depend on any disputed issue of fact. (*People v. Romero* (1994) 8 Cal.4th 728, 739 [35 Cal.Rptr.2d 270, 883 P.2d 388].) When this procedure is employed, as here, to review the evidentiary basis for prison disciplinary action, the trial court's task is simply to evaluate whether, given the documentary record summarizing the facts accepted by the parties, there is sufficient evidence to support the action taken. In such circumstances, the usual deference that would apply to the review of a trial court's ruling based on its superior ability to resolve *factual* questions (e.g., the credibility of witnesses appearing before it) is unwarranted. The facts being undisputed, the question presented on appeal is a question of law, and we review such questions de novo. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 677 [128 Cal.Rptr.2d 104, 59 P.3d 174] [where trial court granted habeas petition "based solely upon documentary evidence," appellate court will "independently review the record"]; *In re DeLuna* (2005) 126 Cal.App.4th 585, 591 [24 Cal.Rptr.3d 643] [same]; cf. *People v. Duren* (1973) 9 Cal.3d 218, 238 [107 Cal.Rptr. 157, 507 P.2d 1365] ["Where there is no conflict in the evidence, there is no requirement that the reviewing court view it in the light most favorable to upholding the trial court's determination"].)[3]

## II

### *"Some Evidence" Supports the Prison Official's Determination That Zepeda Possessed a Weapon*

Zepeda argues that the trial court's order must be affirmed because the Calipatria prison officials acted in violation of his due process rights under the federal Constitution by depriving him of good conduct credits without sufficient evidentiary basis to believe he had committed any infraction.[4] We disagree.

---

[3] Even the case relied on by Zepeda for his contrary position is in accord with our conclusion, stating that the "usual rule" of deferential review does not apply if, as here, "there is no conflict in the relevant evidence"; in that circumstance, " 'there is no requirement that the reviewing court view [the evidence] in the light most favorable to upholding the trial court's determination.' " (*Garcia, supra,* 67 Cal.App.3d at p. 65.)

[4] Specifically, Zepeda argues, "Without 'some evidence' of Zepeda's knowledge and/or his exercise of dominion and control over the razor blades, the disciplinary finding and Zepeda's loss of conduct credits violated his due process rights as interpreted by *Superintendent v. Hill* [(1985) 472 U.S. 445, 455 [86 L.Ed.2d 356, 105 S.Ct. 2768] (*Hill*)] and its progeny." Like the prisoner in the case Zepeda cites, *Hill, supra,* 472 U.S. 445, Zepeda claims only that the disciplinary action violated his federal constitutional due process rights and does "not claim that the disciplinary board's findings failed to meet evidentiary standards imposed by state law." (*Hill,* at p. 457; see Pen. Code, § 2932, subd. (c)(5) [stating that a "prisoner may be

When an inmate challenges the revocation of good conduct credits on federal due process grounds, a reviewing court must apply the extraordinarily deferential standard of review set forth in *Hill, supra,* 472 U.S. 445. Under this standard, prison disciplinary action will not be disturbed so long as "some evidence" supports the action taken. (*Id.* at p. 455.) "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board." (*Id.* at pp. 455–456, italics added.)[5]

Implicit in the "some evidence" standard of review is the recognition that due process requirements imposed by the federal Constitution do not authorize courts to reverse prison disciplinary actions simply because, in the reviewing court's view, there is a realistic possibility the prisoner being disciplined is not guilty of the charged infraction. For example, in *Hill* itself, the United States Supreme Court determined there was "some evidence" that an inmate was guilty of assault when a guard found an inmate with injuries to the mouth and eye, and dirt strewn about, and observed Hill in a group of three inmates jogging away from the scene. (*Hill, supra,* 472 U.S. at pp. 447–448.) Despite the fact that this evidence did not establish that Hill had assaulted the victim, Hill's presence in a group of three inmates, at least one of whom likely had done so, constituted a sufficient evidentiary basis to satisfy due process requirements for purposes of court review of prison disciplinary action. (*Ibid.*)

---

found guilty" of a rules violation resulting in revocation of good time credits "on the basis of a preponderance of the evidence"].)

[5] The United States Supreme Court has explained that a deferential standard of review of revocation of good conduct credits is appropriate for two reasons. First, the impairment of a prisoner's liberty interest that results from the revocation of good conduct credits, while significant, "is not comparable to a criminal conviction" (*Hill, supra,* 472 U.S. at p. 456), and consequently, "the full panoply of rights due a defendant in such proceedings does not apply." (*Wolff v. McDonnell* (1974) 418 U.S. 539, 556 [41 L.Ed.2d 935, 94 S.Ct. 2963].) Second, deference is required because of the unique environment in which prison officials must accomplish "the basic and unavoidable task of providing reasonable personal safety for guards and inmates." (*Id.* at p. 562.) Prison disciplinary actions "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," many of whom "are recidivists who have repeatedly employed illegal and often very violent means to attain their ends." (*Id.* at pp. 561–562.) Such offenders "may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life." (*Id.* at p. 562.) In addition, "[g]uards and inmates co-exist in direct and intimate contact," "[t]ension between them is unremitting," and "[r]elationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner." (*Ibid.*; see *Hill,* at p. 456.)

■ Applying the legal standard announced in *Hill* to the instant case, our independent review of the record demonstrates that, as in *Hill*, although the evidence adduced at Zepeda's disciplinary hearing was "meager" and "there was no direct evidence identifying" Zepeda as the inmate who committed the infraction (*Hill, supra,* 472 U.S. at p. 457), the evidence was sufficient to satisfy the dictates of federal due process. There is some evidence in the record to support the prison official's determination that Zepeda possessed the three razor blades found in his cell.

The primary evidence against Zepeda was the location of the razor blades—in a "paper medicine cup on top of [a] cement shel[f]" in "an area easily accessible to both inmates." Zepeda was one of only two inmates who shared the cell, and "had been in the cell for several days prior to the discovery of the razor blades." In addition, the plastic casings for the razor blades were found in the cell, indicating that alteration of the razor blades occurred there.

■ We recognize, of course, that this evidence would likely be insufficient to form the basis of a criminal conviction because, as Zepeda contends, the prison officials "never negated the possibility" that the razor blades were in the cell without Zepeda's knowledge. (*Goodlow v. Superior Court* (1980) 101 Cal.App.3d 969, 975 [162 Cal.Rptr. 121] [" ' "[p]roof of opportunity of access to a place where [contraband is] found, without more, will not support a finding of unlawful possession" ' "].) This contention, however, misses the point. "Revocation of good time credits is not comparable to a criminal conviction," and "neither the amount of evidence necessary to support such a conviction" nor "any other standard greater than some evidence applies . . . ." (*Hill, supra,* 472 U.S. at p. 456.) Thus, to withstand court scrutiny for federal due process purposes, there is simply no requirement that the evidence "logically precludes any conclusion but the one reached by the disciplinary [official]." (*Id.* at p. 456.) Rather, all that is required is " 'some evidence from which the conclusion of the [official] could be deduced.' " (*Id.* at p. 455; see *Hamilton v. O'Leary* (7th Cir. 1992) 976 F.2d 341, 346 ["some evidence" standard satisfied where "six homemade weapons were found in [a cell] which was occupied by and under the control of Hamilton and his three cellmates," and thus "there was a 25% probability that Hamilton was the owner of the weapons"]; *In re Anderson* (1989) 112 Wn.2d 546 [772 P.2d 510, 512] ["The fact that there was a knife found in the cell is *some* evidence that any one of the four cellmates, or all four of the cellmates, either possessed the knife, placed the knife in the cell or at least knew of its presence in the cell"]; cf. *In re Dikes* (2004) 121 Cal.App.4th 825, 832 [18 Cal.Rptr.3d 9] [some evidence supported revocation of good conduct credits for possession of drugs where prisoner tested positive for marijuana, even though "it is possible to ingest a controlled substance without the knowledge, dominion and control necessary to sustain a criminal conviction"]; *People v. Lucky*

(1988) 45 Cal.3d 259, 292 [247 Cal.Rptr. 1, 753 P.2d 1052] [sufficient evidence for criminal conviction of possession of weapon in prison where "shanks" were found hidden in ceiling shaft nearest defendant's bunk, in a relatively inaccessible area].)

Zepeda's reliance on the evidence that supports his assertion not to have known about the razor blades, such as his cellmate's acknowledgement of ownership and Zepeda's own claim of innocence, does not change the analysis under *Hill. Hill* emphasizes that the reviewing court is not to engage in an "examination of the entire record" or "weighing of the [conflicting] evidence." (*Hill, supra,* 472 U.S. at p. 455.) Rather the narrow role assigned to the reviewing court is solely to determine whether there is "*any evidence* in the record that *could support* the conclusion reached by the disciplinary board." (*Id.* at pp. 455–456, italics added.) Here, there is such evidence, even if, as Zepeda contends, there is other evidence that supports his assertion of innocence. Consequently, the trial court erred in reversing the disciplinary action taken by the prison against Zepeda.

## DISPOSITION

Reversed.

McConnell, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 2006, S146571.