Filed 7/24/19; Certified for publication 8/19/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re CHRISTOPHER RIGSBY<br><br>On Habeas Corpus. | F075680<br><br>(Fresno Super. Ct. No. 16CRWR683290)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order granting writ of habeas corpus.  W. Kent Hamlin, Judge.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Jessica N. Blonien and Maria G. Chan, Deputy Attorneys General, for Appellant the People.

Susan L. Jordan, under appointment by the Court of Appeal, for Respondent Christopher Rigsby.

-ooOoo-

Respondent Christopher Rigsby is presently serving a life sentence for murder.  In 2015, prison officials found him guilty of possessing contraband, which resulted in a 30-day loss of inmate privileges and early release credits.  Rigsby challenged the disciplinary action by petitioning the Fresno Superior Court for a writ of habeas corpus.  The superior court granted the petition, concluding there was insufficient evidence to support the finding of constructive possession.  The warden of Pleasant Valley State Prison (PVSP) appeals the superior court's ruling.

The warden's appeal is well taken. As we explain, the superior court's decision cannot be reconciled with the standard of review for prison disciplinary proceedings. Therefore, the order granting respondent's petition must be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 2015, prison officials at PVSP accused Rigsby of possessing a precursor ingredient for inmate-manufactured alcohol (i.e., "pruno"). In prison slang, the contraband is known as a "kicker." According to the record, a kicker is a concoction of bread, fruit, and sugar. Adding water and heat to the mixture "creates a fermenting process" eventually resulting in a crude alcoholic beverage. After the liquid is separated from the solid ingredients, those remnants (i.e., the kicker) may be reused "to create another batch of alcohol."

The factual allegations were documented in a California Department of Corrections and Rehabilitation form 115 (CDC-115) rules violation report. The correctional officer who had found the contraband wrote, "I discovered in cell 132 on the bottom shelf, a 16 ounce Folgers coffee jar[.] [A]s I opened the jar a strong odor of alcohol emanated from the jar. The contents of the coffee jar contained a yellow/orange pulpy substance similar to that of Inmate Manufactured 'Kicker' …. The cell is occupied by inmates Diblasio … and Rigsby." In a supplemental "Alcohol Verification Report," a correctional sergeant claimed to have verified the substance "was in fact inmate manufactured 'kicker.'"

Rigsby denied the charge and stated, "The kicker did not belong to me, I had no knowledge of it." He was afforded a hearing and the opportunity to examine witnesses. According to the CDC-115 report, Rigsby briefly questioned his cellmate and the officer who discovered the contraband. He asked the officer, "Was the kicker found in my living area amongst my possessions?" The answer was no. He asked his cellmate, "Did I have knowledge of the kicker in the cell?" and the cellmate replied, "No."

2.

The hearing officer, Lieutenant Daniel Burns, found Rigsby guilty as charged. His portion of the CDC-115 report states, "Although the kicker was not found in Rigsby's property or his shelf he still maintains constructive possession over all items in his cell in that he has knowledge of the item and the ability to control it." Rigsby unsuccessfully pursued administrative remedies before filing his petition for a writ of habeas corpus.

The habeas petition alleged six grounds for relief. Five of the claims variously challenged the sufficiency of the evidence. Most concerned the element of actual or constructive possession, but Rigsby also argued there was no evidence the kicker contained alcohol. The sixth claim disputed the existence of any rules or regulations against possessing a kicker.[1]

The superior court requested an informal response and later issued an order to show cause. As relevant here, the warden's return to the order to show cause provided evidence Rigsby was serving time for convictions of second degree murder, committing vehicular manslaughter while intoxicated, and driving under the influence of alcohol. Rigsby's disciplinary record included a separate rules violation for possession of inmate-manufactured alcohol, and in that instance he had admitted guilt.

The return also contained a supporting declaration by Lieutenant Burns. The declaration states, in pertinent part:

> "A kicker is often preferred by inmates because it is easier to conceal from staff and quickly utilized to make Pruno. While the odor may be less strong than during the fermentation process, there is still a pungent odor

---

[1]This contention was impliedly (and appropriately) rejected by the superior court. Rigsby was charged with violating California Code of Regulations, title 15, section 3016, former subdivision (a). During the relevant time period, the provision read, "Inmates shall not inhale, ingest, inject, or otherwise introduce into their body; use, possess, manufacture, or have under their control any controlled substance, medication, or alcohol, except as specifically authorized by the institution's/facility's health care staff." The superior court found sufficient evidence that the kicker contained alcohol (see further discussion, *post*), which is a finding Rigsby does not contest on appeal. We note section 3016 was recently revised, and the prohibition against alcohol possession now appears in subdivision (b). (Cal. Code Regs., tit. 15, § 3016, Register 2018, No. 15, Apr. 9, 2018, operative July 1, 2018.)

associated with making Pruno which is impossible to keep from a cellmate.… [¶] … [¶] I found inmate Rigsby had constructive possession because based on my knowledge and experience as an employee of the CDCR, it is near impossible for two inmates who live in a 6' by 11' cell to conceal a substance such as a kicker. And, while the kicker was not found among inmate Rigsby's property, it was on a shelf where he would have seen it and had access to it. The fact that the kicker was found in a open area accessible to anyone in the cell lends to Rigsby's knowledge of the substance."

Upon consideration of the written submissions, the trial court ordered an evidentiary hearing. The order identified three "disputed factual issues necessary to the resolution of the present petition …: (1) whether the inmate manufactured 'kicker' would have necessarily been apparent to [Rigsby] based on the area of the cell in which it was located; (2) whether the inmate manufactured 'kicker' actually contained alcohol …; and (3) whether [Rigsby] actually lost any custody credits as the result of his CDC 115 serious rule violation." Only the first and second issues are germane to this appeal.[2]

The warden called three witnesses at the evidentiary hearing, one of whom gave testimony regarding Rigsby's inability to accrue credits. The other two witnesses were Rigsby and Lieutenant Burns. Rigsby did not present a case-in-chief.

Rigsby testified he and his cellmate had been residing together for approximately six months at the time of the incident. He was not in his cell when the search occurred and thus had no personal knowledge of the circumstances surrounding the discovery of the contraband. Rigsby believed it was a "known fact" that the item was found "on the lower shelf, which was occupied by [his cellmate]."

The testimony of Lieutenant Burns was consistent with his written declaration and the CDC-115 report. He took a more definitive stance on the mens rea issue, testifying

---

[2]The warden disputed the availability of habeas review, arguing Rigsby's murder conviction precluded him from accruing credits and, since he had no credits to lose, the disciplinary action did not implicate his constitutional due process rights. (See Pen. Code, § 2933.2; *In re Johnson* (2009) 176 Cal.App.4th 290, 297–298.) However, the warden has expressly abandoned this argument in light of unspecified "changes in the credit earning scheme." Therefore, we express no opinion on the issue and do not further address it.

4.

the smell of a kicker is "so pungent" that it would have been impossible for Rigsby not to have known of its presence in the cell. On cross-examination, Lieutenant Burns was asked, "[C]an a kicker be made without ever being turned into alcohol?" He answered, "No."

The superior court found sufficient evidence that the kicker contained alcohol. However, Lieutenant Burns' contentions regarding the detectability of the odor were rejected. The judge said, "[T]here is no evidence that there was any odor in the cell, and I'm quite confident your officer would have written in his report or testified at the hearing, I walked into the cell and I smelled an odor of alcohol that suggested to me I should search further and look for an item. He didn't. He didn't say that. In fact, he didn't say he smelled it at all until he opened the can. So we have no idea how long the item's been in the cell. We have no idea that there's any odor emitting from the can."

The superior court also noted the lack of evidence regarding whether the coffee jar was in "plain view." The circumstances of proximity and accessibility were deemed insufficient:

> "It's just a classic standard procedure of PVSP to presume that two inmates in a cell must necessarily own and control every item in the cell. [However,] there's no evidence here that Mr. Rigsby knew that item was there or had any ability to control or possess it. None. Not some evidence; none. … I'm sure there's lots of activities in cells that are worthy of discipline, but somebody happening to occupy a cell with someone else who has an item, no evidence of which emits any odor or is visible to anyone, and just assuming that because he's in the same cell he must necessarily know it's there and have a right to control and possess it is a mere assumption not supported by facts."

On March 23, 2017, the superior court issued a minute order granting Rigsby's petition. The California Department of Corrections and Rehabilitation was instructed to "restore the custody credits that were forfeited and to set aside the violation of CDC 115 from [Rigsby]'s file." A timely notice of appeal followed.

5.

# DISCUSSION

Prisoners are entitled to minimal due process safeguards in disciplinary matters involving the possible loss of early release credits. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 558.) The judicial remedy for a denial of those protections is a writ of habeas corpus. In *Superintendent v. Hill* (1985) 472 U.S. 445 (*Hill*), the United States Supreme Court held "due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." (*Id*. at p. 457.)

Under the *Hill* decision, "prison disciplinary action will not be disturbed so long as 'some evidence' supports the action taken. [Citation.] 'Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record* that could support the conclusion reached by the disciplinary board.'" (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1498 (*Zepeda*), quoting *Hill*, *supra*, 472 U.S. at pp. 455–456.)

"Implicit in the 'some evidence' standard of review is the recognition that due process requirements … do not authorize courts to reverse prison disciplinary actions simply because, in the reviewing court's view, there is a realistic possibility the prisoner being disciplined is not guilty of the charged infraction." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.) "'Revocation of good time credits is not comparable to a criminal conviction,' and 'neither the amount of evidence necessary to support such a conviction' nor 'any other standard greater than some evidence applies ….'" (*Hill*, *supra*, 472 U.S. at p. 456.) Thus, to withstand court scrutiny for federal due process purposes, there is simply no requirement that the evidence 'logically precludes any conclusion but the one reached by the disciplinary [official].' (*Id*. at p. 456.) Rather, all that is required is "'some evidence from which the conclusion of the [official] could be deduced.'" [Citations]." (*Zepeda*, at p. 1499.)

Against the backdrop of these guidelines, the parties dispute whether the superior court erred by ordering an evidentiary hearing. We need not resolve this issue because the answer does not affect the outcome of the appeal. "Our standard of review is de novo with respect to questions of law and the application of the law to the facts. We accept as final the superior court's resolution of pure questions of fact if they are supported by substantial evidence. [Citation.] Here, the superior court made very few specific findings of fact regarding the evidence, and none that is significant to the main part of our analysis."[3] (*In re Richards*, *supra*, 55 Cal.4th at p. 960.)

Our task is to evaluate the sufficiency of the evidence. The controlling authorities are *Hill* and *Zepeda*. What matters most is the location and accessibility of the contraband, and those facts, along with other undisputed circumstances, satisfy the "extraordinarily deferential standard of review set forth in *Hill*." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.)

In *Hill*, two inmates were held responsible for assaulting another prisoner and were punished with a loss of time credits. (*Hill*, *supra*, 472 U.S. at pp. 447–448.) The disciplinary board had "received evidence in the form of testimony from [a] prison guard and copies of his written report." (*Id*. at p. 456.) The guard attested to having encountered the injured victim and seeing three inmates "jogging away together down the walkway" in an area enclosed by a chain link fence. The area was otherwise vacant, but the victim denied the accused parties had caused his injuries. (*Id*. at pp. 447–448.) The Supreme Court acknowledged the evidence "might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant," but it

---

**3**Rigsby implies the superior court made a finding of fact regarding his "knowledge of the kicker," but that is not accurate. Rigsby's professed lack of knowledge was neither credited nor rejected. The superior court ruled there was "no evidence" from which a determination could be made regarding whether he "knew that item was there or had any ability to control or possess it." Again, the application of law to undisputed facts is a legal issue that we review de novo. (*In re Richards* (2012) 55 Cal.4th 948, 960; *In re Martinez* (2012) 210 Cal.App.4th 800, 815.)

7.

concluded the record was "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." (*Id*. at p. 457.)

The *Hill* opinion illustrates the significance of proximity to the locus of the infraction. This principle is underscored in the *Zepeda* case, which involved the search of a prison cell jointly occupied by Richard Zepeda and another inmate. "During the search, [a guard] found three razor blades, which had been removed from their plastic casing, inside a paper cup covered with a lid on top of a cement shelf. The shelf was in a common area of the cell, accessible to both inmates. The 'plastic cases of the razors' were also located in the cell, although the record [did] not indicate exactly where in the cell they were found." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1495.) The cellmate immediately claimed ownership of the contraband. When Zepeda was questioned about the razor blades, he "denied having any knowledge of them." (*Ibid*.)

Prison officials found Zepeda guilty of possessing a weapon in violation of California Code of Regulations, title 15, section 3006, subdivision (a). (*Zepeda*, *supra*, 141 Cal.App.4th at pp. 1495–1496.) He filed a petition for a writ of habeas corpus, and the Superior Court of Imperial County overturned the disciplinary action. The court's stated rationale was remarkably similar to the explanation given by the judge in this case: "'While [the Warden] argues there is some evidence of constructive possession of a weapon by [Zepeda], this evidence is nothing more than that [Zepeda] shares his cell with a cellmate and is allegedly responsible for any contraband [in the] common area. Still, there must be some evidence of either exclusive possession or control. The evidence shows [Zepeda] has no control over what contraband may be in the possession of his cellmate and no evidence was presented that [Zepeda] possessed any knowledge of the weapon in question.'"[4] (*Zepeda*, at p. 1496.)

---

[4]"Constructive Possession exists where a person has knowledge of an object and control of the object or the right to control the object, even if the person has no physical contact with it." (Cal. Code Regs., tit. 15, § 3000.)

The order granting Zepeda's habeas petition was reversed on appeal. The appellate court found the evidence was sufficient under the *Hill* standard, emphasizing "the location of the razor blades … in 'an area easily accessible to both inmates'" and the fact "Zepeda was one of only two inmates who shared the cell." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1499.) "In addition, the plastic casings for the razor blades were found in the cell, indicating that alteration of the razor blades occurred there." (*Ibid*.)

Here, the superior court attempted to distinguish *Zepeda* by claiming "the razor blades had been in the cell for days," whereas there was no evidence of how long the kicker had been in Rigsby's cell. This reflects a misreading of the cited opinion. The relevant text is as follows: "Zepeda was one of only two inmates who shared the cell, and 'had been in the cell for several days prior to the discovery of the razor blades.'" (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1499.) In other words, the *inmate* had been in the cell for several days, not the contraband. (*Ibid*.) Thus, Zepeda could not argue he had just moved into the cell and was necessarily ignorant of the contents therein. Rigsby confirmed he and his cellmate had been living together for about six months when the kicker was found in their cell. Instead of differentiating *Zepeda*, the superior court inadvertently alluded to a factual similarity.

In further reference to *Zepeda*, the superior court said, "Plastic cases were found there indicating some activity with the razor blades was conducted in the cell. We have none of that evidence here." (See *Zepeda*, *supra*, 141 Cal.App.4th at pp. 1495, 1499.) Rigsby's briefing also highlights this distinction, but we fail to see the materiality. Although the *Zepeda* court believed the plastic casings had probative value, the location and accessibility of the razor blades were the dispositive circumstances. This is apparent from citations in the opinion to other factually analogous cases, e.g., "*Hamilton v. O'Leary* (7th Cir. 1992) 976 F.2d 341, 346 ['some evidence' standard satisfied where 'six homemade weapons were found in [a cell] which was occupied by and under the control of Hamilton and his three cellmates,' and thus 'there was a 25% probability that

9.

Hamilton was the owner of the weapons']; *In re Anderson* (1989) 112 Wn.2d 546 ['The fact that there was a knife found in the cell is *some* evidence that any one of the four cellmates, or all four of the cellmates, either possessed the knife, placed the knife in the cell or at least knew of its presence in the cell'].″ (*Zepeda*, at p. 1499.)

The superior court's inability to determine whether the coffee jar was in "plain view" does not render the evidence insufficient, nor does it matter that the item was located on a shelf used by Rigsby's cellmate. Such details are not discussed in *Zepeda*. The opinion merely indicates the contraband was found inside of a container "on top of a cement shelf" located "in a common area of the cell, accessible to both inmates." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1495.)

In this case, the investigating officer said the coffee jar was discovered "on *the* bottom shelf." (Italics added.) Rigsby's testimony similarly referenced "*the* lower shelf" (italics added), which indicates there was only one area of shelving. Rigsby described the lower shelf as being "occupied" by his cellmate, and the record shows Rigsby kept his own belongings on a different shelf. He made these statements at the evidentiary hearing: "[T]here's two of us living in a small cell, and we do have very meager possessions, but they are our possessions, and we should have some, you know, basic expectation of privacy with our couple little things, and a shelf is one of them." Since Rigsby's shelf must have been located above "the lower shelf," the contraband was undeniably found "in a common area of the cell, accessible to both inmates." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1495.)

Rigsby cites cases that hold proximity and accessibility are not alone sufficient to prove unlawful possession. (E.g., *People v. Land* (1994) 30 Cal.App.4th 220, 224; *People v. Zyduck* (1969) 270 Cal.App.2d 334, 336.) The *Zepeda* opinion says this argument "misses the point" because prison disciplinary action is "'not comparable to a criminal conviction.'" (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1499, quoting *Hill*, *supra*, 472 U.S. at p. 456.) Unlike in a criminal appeal, "the narrow role assigned to the

reviewing court is solely to determine whether there is '*any evidence* in the record that *could support* the conclusion reached by the disciplinary board.'" (*Zepeda*, at p. 1500, quoting *Hill*, at pp. 455–456.)

To summarize, Rigsby and another inmate jointly occupied a prison cell that was six feet by eleven feet in size. Rigsby himself noted the two of them had "very meager possessions." During a search of the cell, prison officials discovered a prohibited item located in a common area accessible to both men. These facts are not materially distinguishable from those in *Zepeda* and thus permit an inference, i.e., constitute "some evidence," that Rigsby was in possession of the contraband. The superior court's analysis conflicts with the case law. We are not persuaded to depart from precedent that is directly on point.

## DISPOSITION

The order granting respondent's petition for a writ of habeas corpus is reversed.

_____
PEÑA, J.

WE CONCUR:


_____
FRANSON, Acting P.J.


_____
DeSANTOS, J.

11.

Filed 8/19/19

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CHRISTOPHER RIGSBY<br><br>On Habeas Corpus. | F075680<br><br>(Fresno Super. Ct. No. 16CRWR683290)<br><br>**ORDER GRANTING REQUEST FOR PUBLICATION** |

       As the nonpublished opinion filed on July 24, 2019, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

PEÑA, J.

WE CONCUR:

FRANSON, Acting P.J.

DeSANTOS, J.