Filed 9/21/22  In re Mello CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re WILLIAM MELLO,<br><br>On Habeas Corpus. | F082667<br><br>(Kern Super. Ct. No. HC016544A)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order granting writ of habeas corpus.  David R. Zulfa, Judge.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Maria G. Chan and Colby Mills, Deputy Attorneys General, for Appellant Christian Pfeiffer, Warden of Kern Valley State Prison.

Scott Concklin, under appointment by the Court of Appeal, for Respondent William Mello.

-ooOoo-

---

[*]      Before Levy, Acting P. J., Franson, J. and Peña, J.

## INTRODUCTION

William Mello (respondent) is currently serving a sentence of life without the possibility of parole for murder. In 2019, a prison official found him guilty of possessing contraband based on the discovery of a sewing needle secreted inside of a pen on his bunk. As a sanction for the violation, the prison assessed a 30-day loss of credits and other inmate privileges.

Respondent challenged the disciplinary finding in a petition for writ of habeas corpus, arguing he was authorized to possess the needle for religious purposes. The superior court granted the petition, ruling the prison failed to produce "some evidence" respondent was not authorized to possess the needle.

The prison (appellant) appeals from the superior court's ruling. We conclude the superior court's ruling does not comport with the applicable standard of review for prison disciplinary proceedings, and that the prison's guilty finding was supported by "some evidence." We reverse.

## BACKGROUND

In May 2019, during a random search of respondent's cell, a correctional officer discovered two sewing needles "inside some writing pens on [respondent's] assigned [b]unk." Respondent admitted the needles belonged to him and told the correctional officer he had possessed them for a long time and had forgotten about them. The correctional officer examined the sewing needles and concluded they are the same type of needles used in Prison Industry Authority (PIA). Based on the discovery of the needles, the correctional officer authored a "Rules Violation Report" for "Possession of [D]angerous [C]ontraband." (Cal. Code Regs., tit. 15, § 3006, subd. (a).)[1]

---

[1] All further regulatory references are to title 15 of the California Code of Regulations.

Respondent pled not guilty at his disciplinary hearing. He elected to give a statement and told the hearing officer he was "using the needles" for his "[N]ative [A]merican stuff," and that one needle is for "beading," and one is for "leather work." Respondent presented no other evidence and called no witnesses. At the conclusion of the hearing, the hearing officer found respondent guilty and assessed a 30-day loss of credits and other inmate privileges. The hearing officer based his finding on the report of the correctional officer who discovered the needles, and "photographic evidence which depicts … 2 needles 1 used for sewing and 1 from a sewing machine used in PIA."

Respondent exhausted his administrative remedies through the prison and filed a habeas petition in the superior court. In the petition, respondent alleged there was insufficient evidence to support his disciplinary finding because, as a Native American inmate, he was authorized to possess two sewing needles. Respondent cited to the prison's "Religious Personal Property Matrix," which allows eligible inmates to possess "Beading Materials," including "Needles, limited to 2 per inmate, size 10 and/or 12." (§ 3190, subd. (b).)

The superior court issued an order directing appellant to submit an informal response, stating it had insufficient information to adjudicate the writ petition. At the superior court's direction, appellant provided a photograph of the two needles found in respondent's cell, a photograph of a needle from a sewing machine used by the PIA, and a photograph of needles approved for possession by "Native American Indigenous inmate[s]." The photograph of approved needles includes exemplars of "SHARPS" needles, sizes 10 and 12. In the informal response, appellant stated it does not dispute that respondent is classified as a "Native American Indigenous inmate," and as such, "may possess up to two needles, of size 10 or size 12."

After receiving informal briefing from both parties, the superior court issued an order to show cause, stating:

3.

"Upon a review of these photographs it does appear that the needles found in [respondent's] cell resemble those approved for a Native American Indigenous inmate to possess and do not resemble the type of needles used by PIA in the sewing machines. Specifically, a sewing machine needle such as used by the PIA has an eyelet near the sharp end of the needle whereas beading and leather/boot needles both have the eyelet opposite the sharp end of the needle."

Appellant filed a return to the order to show cause and submitted a declaration from the hearing officer who conducted respondent's disciplinary hearing. In the declaration, the hearing officer further explained his reasons for finding respondent guilty:

"I specifically recall that while presiding over [respondent's] May 29, 2019 disciplinary hearing, I compared a picture of the needles found in [respondent's] bunk with an actual needle used in a [PIA] sewing machine. I found that one needle, the heavier, thicker needle, was from a PIA sewing machine. PIA sewing needles are not authorized for possession by Native American Indigenous Inmates. I found that the other needle was a hand sewing needle, not from a PIA sewing machine."

The superior court granted respondent's habeas petition without ordering an evidentiary hearing, stating:

"This Court finds, based on the photographs of the needles in question and examples of needles used for beading and leather work - size 10 or 12 and PIA needles provided by [respondent] and [appellant], the needles found in [respondent's] cell resemble those approved for possession by a Native American Indigenous inmate and do not resemble needles used by PIA in the sewing machines.

"The Court finds [appellant] failed to produce 'some evidence' in support of the [rules violation report] that the needles found in [respondent's] cell were contraband for a Native American Indigenous inmate to possess."

## DISCUSSION

Appellant contends the hearing officer's finding that respondent was guilty of possessing contraband was supported by sufficient evidence, and that the superior court's

4.

order granting the habeas petition cannot be reconciled with the highly deferential "some evidence" standard of review. We agree.

## I. Standard of Review.

### A. We review the superior court's ruling de novo.

"In a habeas corpus proceeding, once the issues have been properly joined, the court may grant (or deny) the relief sought without ordering an evidentiary hearing as long as resolution of the petition does not depend on any disputed issue of fact. [Citation.] When this procedure is employed … to review the evidentiary basis for prison disciplinary action, the trial court's task is simply to evaluate whether, given the documentary record summarizing the facts accepted by the parties, there is sufficient evidence to support the action taken. In such circumstances, the usual deference that would apply to the review of a trial court's ruling based on its superior ability to resolve *factual* questions (e.g., the credibility of witnesses appearing before it) is unwarranted. The facts being undisputed, the question presented on appeal is a question of law, and we review such questions de novo." (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1497 (*Zepeda*).)

Here, the superior court's ruling was based on a set of undisputed facts, as it relied on information that was before the hearing officer. The superior court reviewed the photograph of the needles from respondent's cell and found they look more like the needles he is authorized to possess than the PIA sewing machine needles he is not authorized to possess. Although additional evidence, such as the declaration of the hearing officer, was added after the superior court issued an order to show cause, it did not create a conflict in the evidence and merely served to clarify the evidence at the disciplinary hearing, which was not contemporaneously recorded. Therefore, we apply a de novo standard of review, and afford no deference to the superior court's ruling. (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1497; *In re DeLuna* (2005) 126 Cal.App.4th 585,

5.

591 ["When, as here, the trial court rules on a habeas corpus petition without conducting an evidentiary hearing, we independently review the documentary evidence on appeal."].)

### B. We review the hearing officer's disciplinary finding for "some evidence."

"Prisoners are entitled to minimal due process safeguards in disciplinary matters involving the possible loss of early release credits." (*In re Rigsby* (2019) 38 Cal.App.5th 1011, 1016–1017, citing *Wolff v. McDonnell* (1974) 418 U.S. 539, 558.) "[D]ue process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." (*Superintendent v. Hill* (1985) 472 U.S. 445, 457 (*Hill*).) Thus, "to insure that the prisoner is not arbitrarily deprived of good conduct credits, the findings of the prison authorities must be supported by 'some evidence.' " (*In re Rothwell* (2008) 164 Cal.App.4th 160, 165 (*Rothwell*).)

The "some evidence" standard of review is "extraordinarily deferential." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.) "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (*Hill*, *supra*, 472 U.S. at pp. 455–456.) Reversal is not appropriate even if "in the reviewing court's view, there is a realistic possibility the prisoner being disciplined is not guilty of the charged infraction." (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.)

Respondent contends that a more stringent standard of review is appropriate because Penal Code section 2932, subdivision (c)(5), which states that prison rule violations must be found by a preponderance of the evidence, created a higher standard of proof than what is mandated by federal due process. (See *Hill*, *supra*, 472 U.S. at p. 456.) We disagree. Application of the "some evidence" standard to the review of prison disciplinary findings in California prisons is well established. (See *Zepeda*, *supra*, 141 Cal.App.4th at p. 1498; *Rothwell*, *supra*, 164 Cal.App.4th at pp. 165–166; *In re*

*Rigsby*, *supra*, 38 Cal.App.5th at p. 1017; *In re Johnson* (2009) 176 Cal.App.4th 290, 299–300.) In *Rothwell*, the court held that Penal Code section 2932, subdivision (c)(5), has no bearing on the standard of review, because "appellate review of factual findings is 'governed by the degree to which it is appropriate to presume correctness of such determinations.' " (*Rothwell*, at p. 166.) The court explained that a deferential standard of review is warranted in this context given that inmates facing disciplinary action by a prison are not entitled to the " 'full panoply of rights' " afforded to criminal defendants, and because prison administrators face the unique and difficult challenge of maintaining order and ensuring the safety of guards and inmates. (*Id.* at pp. 166–167.)

Respondent argues *Rothwell's* reasoning has been undermined by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, which held that, when reviewing a finding made by clear and convincing evidence, "an appellate court must attune its review for substantial evidence to the heightened degree of certainty required by this standard." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 997.) Respondent contends we should apply similar logic to his disciplinary finding based on the heightened evidentiary standard required by Penal Code section 2932, subdivision (c)(5). We decline to do so. *Conservatorship of O.B.* addresses the applicable standard of review of an order appointing a limited conservatorship in a probate matter. (*Conservatorship of O.B.*, at p. 995.) It has nothing to do with prison discipline. While the high court's holding applies broadly to review of all findings by clear and convincing evidence, the opinion makes no mention of the "some evidence" standard. Accordingly, we decline to deviate from *Rothwell*.

## II.     The hearing officer's ruling was supported by "some evidence."

The hearing officer's ruling was based on two findings. First, the hearing officer found the needles constituted "dangerous property" within the meaning of applicable prison regulations. (§ 3006, subd. (a).) Second, the hearing officer found one of the two

needles did not meet the exception for personal religious property. Upon review of the record, we conclude both findings were supported by "some evidence."

**A.     Respondent possessed "dangerous property."**

Respondent was found guilty of possessing "dangerous property" in violation of section 3006, subdivision (a). This subdivision states, in pertinent part: "Inmates shall not possess or have under their control or constructive possession any weapons …."

Respondent does not dispute that he possessed the needles. The remaining question is whether his needles constituted weapons. We conclude they do. We agree with the hearing officer's statement that needles "present a threat to the safety of staff and inmates, and security of the institution," and that they can be "used to create weapons, which may then be used against other inmates or staff." Needles are sharp objects designed to puncture. Even in their unaltered state, respondent's needles could have been used to inflict significant injury on an inmate or staff member. When combined with other materials, such as a handle, their potential danger becomes even greater. Accordingly, we conclude the hearing officer's conclusion the needles were "dangerous property" was supported by "some evidence."

**B.     One of respondent's needles did not meet the exemption for religious personal property.**

The remaining issue is whether respondent was nonetheless authorized to possess the needles as religious personal property. We conclude "some evidence" supports the hearing officer's conclusion that one of the two needles did not meet the applicable exemption.

Appellant does not dispute that respondent was entitled to possess two needles as described in the "Beading Materials" section of the Religious Personal Property Matrix. Section 3190, subdivision (b) authorizes eligible inmates to possess specific "religious personal property" items as set forth in the Religious Personal Property Matrix, which is

8.

incorporated into the regulation by reference.[2] The matrix sets forth various categories of qualifying religious personal property items, such as "altar cloth" and "prayer oil." Respondent relies on a category titled "Beading Materials," which states:

> "Beads may be wood, plastic, or natural material (i.e. stone, bone, seed, etc.) no larger than 1/4" in diameter. Total quantity limited to 12 hanks. Finished items shall be multi colored. Sinew or String in rolls no greater than 50 feet in length. *Needles, limited to 2 per inmate, size 10 and/or 12.* Any misuse of beading materials may result in loss of this privilege." (Italics added.)

We have reviewed the photographs of respondent's needles, the photograph of an exemplar sewing machine needle from the PIA, and the photograph submitted by appellant of needles approved for possession by "Native American Indigenous inmate[s]." These photographs support the hearing officer's finding. One of respondent's needles is significantly thicker than the other. This thicker needle, when compared to the two exemplars, looks more like the PIA sewing machine needle. The thinner needle, on the other hand, looks more like the approved size 10 or size 12 sewing needles. We, therefore, agree with the hearing officer's assessment of the evidence. The thicker of the two needles was too thick to be an authorized needle.

We also find the manner in which respondent stored the needles constituted consciousness of guilt. Respondent did not possess the needles openly. We are not persuaded, as was the superior court, by respondent's claim he placed the needles inside of his pens as a means of safe storage. The more reasonable conclusion is that respondent hid the needles in the pens because he knew he was not allowed to possess one of them.

---

[2] The updated Religious Personal Property Matrix can be accessed at the public website for the California Department of Corrections and Rehabilitation: <https://www.cdcr.ca.gov/regulations/cdcr-regulations/dom-appendices/>

Following the superior court's reasoning, respondent contends the thicker needle could not have been a PIA sewing machine needle because of the position of its eye. He asserts it is "common knowledge" that a hand sewing needle has the eye at the blunt end, whereas a sewing machine needle has the eye closer the sharp end. We disagree. The identification of different types of sewing needles requires specialized knowledge related to a trade and hobby that is not universally practiced. Even if we were to accept respondent's general premise that *many*, or even *most*, sewing machine needles have an eye closer to the sharp end, we certainly could not conclude, on this record, that *all* sewing machine needles are so configured. Sewing is an expansive trade that involves many different tools for many different tasks. Because there is nothing in the record describing the type of equipment used in the PIA, we do not presume to know what type of sewing machine needles are used. Instead, we rely on the hearing officer's institutional knowledge. In the absence of evidence to the contrary, we accept the hearing officer's conclusion that the thicker of respondent's needles was a PIA sewing machine needle.

Respondent also argues that even if the thicker needle was a PIA sewing machine needle, he is authorized to possess it because it is still a "needle" within the meaning of the Religious Personal Property Matrix. This argument ignores that the section authorizing possession of two needles specifies that the needles are "beading materials." (See *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131 [" '[W]henever possible, significance must be given to every word [in a statute] in pursuing the legislative purpose, and the court should avoid a construction that makes some words surplusage.' "].) Interpreting this category of the Religious Personal Property Matrix as allowing possession of a sewing machine needle would not comport with all applicable regulatory language. Moreover, the acquisition of property by inmates, including religious personal property, is limited to authorized vendors. (§ 3190, subd. (k)(4) ["Special purchases of religious items will be from departmentally-approved vendors of

10.

religious items only"], § 3190, subd. (g) [Inmates may only receive packages ordered from "a departmentally-approved inmate package vendor"].)  No regulation authorizes the requisition of religious personal property from the PIA.  Thus, a PIA sewing machine needle is not exempted by the Religious Personal Property Matrix and constitutes contraband.

The highly deferential "some evidence" standard requires only a "modicum of evidence."  (*Hill*, *supra*, 472 U.S. at p. 450.)  Based on our de novo review, we conclude the superior court did not afford the hearing officer the appropriate level of deference.  The hearing officer found, based on his experience and institutional knowledge, that one of respondent's needles was a PIA sewing machine needle, and not of the type approved for possession by inmates as religious property.  This was sufficient to support the disciplinary finding.  Accordingly, we conclude the superior court erred by failing to find the hearing officer's ruling was supported by "some evidence."[3]

## DISPOSITION

The superior court's order granting respondent's petition for writ of habeas corpus is reversed.

---

[3]    Appellant also contends the superior court lacked habeas jurisdiction, arguing his loss of credits did not implicate due process because he is serving a sentence of life without the possibility of parole.  Because we reject respondent's habeas claim on the merits, we need not address this contention.

11.