11/27/23

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| In re ARLONZO J. BANKS on Habeas Corpus. | C098247 <br><br> (Super. Ct. No. 22HC00126) |


APPEAL from a judgment of the Superior Court of Sacramento County, Allison Williams, Judge.  Affirmed.

Rob Bonta, Attorney General, Sara J. Romano, Assistant Attorney General, Julie A. Malone, Van Kamberian, Deputy Attorneys General, for Appellant.

Sharon Wrubel, under appointment by the Court of Appeal, for Respondent.


Someone mailed inmate/respondent Arlonzo J. Banks two large manila envelopes with the controlled substance Suboxone hidden inside.  A correctional sergeant intercepted the envelopes in the prison mailroom, and inmate Banks was issued a rules violation report charging him with conspiracy to introduce a controlled substance into prison for distribution or sale.  During the investigation, inmate Banks tried to ask the sergeant who issued the rules violation report, " 'What, if any, evidence demonstrates I

agreed with another individual to introduce a controlled substance into the facility?' "
The hearing officer deemed the question irrelevant.

Inmate Banks's question was spot on. The record contains *no* evidence of the first element of conspiracy, namely, the existence of an agreement between at least two persons. We therefore affirm the trial court's grant of inmate Banks's petition for writ of habeas corpus that vacated a guilty finding of conspiracy.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2020, a correctional sergeant was processing mail in the prison mailroom and searched two large manila envelopes addressed to inmate Banks. That correctional sergeant found "numerous small orange squares glued underneath the bottom flap of both the manila envelopes" and gave the envelopes to another correctional sergeant, Sergeant Laguna, for further investigation. Sergeant Laguna removed the orange squares, took photographs of the envelopes, and sent the squares to a pharmacist, who determined they were strips of the controlled substance Suboxone. The envelopes were addressed using defendant's CDCR number, two different cell block numbers, and the same return address, although the return addressee's name was spelled differently on each envelope. The sergeant issued a rules violation report to inmate Banks, charging him with conspiring to introduce a controlled substance into prison for distribution or sale. (Cal. Code Regs., tit. 15, § 3016, subd. (d).)

Inmate Banks directed the correctional officer who had been assigned as his investigative employee to ask Sergeant Laguna, " 'What, if any, evidence demonstrates I agreed with another individual to introduce a controlled substance into the facility?' " The senior hearing officer in charge of hearing the rules violation report deemed the question irrelevant.

At the rules violation report hearing, inmate Banks pled not guilty and said, "I don't know nothing about this. If I did this I would say so. I always have. I don't know that person. And look, the names are spelled different. It wasn't mine." As additional

2

evidence, the hearing officer considered Sergeant Laguna's rules violation report, the pharmacist's supplemental report that confirmed the hidden strips were Suboxone, and the initial incident report describing the envelopes.

The hearing officer found inmate Banks guilty, saying there was "an agreement between two or more people" to introduce a controlled substance because the envelopes were addressed to inmate Banks, the Suboxone strips were concealed, and the envelopes had a fictitious return address. Given the "prison value of said contraband,"[1] the hearing officer reasoned the sender would not risk sending the envelopes blindly, so inmate Banks and the sender must have communicated about the smuggling method.

The hearing officer assessed a 180-day loss of custody credits, 180-day loss of pay, 60-day loss of canteen privileges, 365-day loss of visiting privileges, 730-day loss of contact visiting privileges, seven-year loss of family visits, and one month of mandatory drug testing.

Inmate Banks exhausted his administrative remedies and then filed a petition for writ of habeas corpus in the trial court. The court ordered informal responses, received those responses, and then issued an order to show cause. Both parties filed briefing. Prison warden/appellant Jeff Lynch argued the sender of the envelopes must have communicated with inmate Banks because the envelopes were addressed to inmate Banks and the Suboxone was concealed. Thus, according to the warden, there was circumstantial evidence of an agreement between the sender and inmate Banks. Inmate Banks argued the evidence was insufficient to establish a conspiracy because anyone could easily learn an inmate's mailing address and the concealment of the drugs showed only that the sender was trying to sneak them into the prison, not that inmate Banks had

---

[1] There was no evidence about the value of the Suboxone.

any agreement with the sender. There was also no evidence of phone calls, visitations, or other communications between inmate Banks and the sender.

The court granted the petition in a written order, explaining that the senior hearing officer's finding was not supported by " 'some evidence.' " The court also directed the California Department of Corrections and Rehabilitation to vacate the guilty finding and restore inmate Banks's privileges.

## DISCUSSION

The warden argues that at least some evidence supports the senior hearing officer's decision to find inmate Banks guilty of conspiring to introduce a controlled substance into the prison for sale. We disagree.

"In a habeas corpus proceeding, once the issues have been properly joined, the court may grant (or deny) the relief sought without ordering an evidentiary hearing as long as resolution of the petition does not depend on any disputed issue of fact. [Citation.] When this procedure is employed . . . to review the evidentiary basis for prison disciplinary action, the trial court's task is simply to evaluate whether, given the documentary record summarizing the facts accepted by the parties, there is sufficient evidence to support the action taken. In such circumstances, the usual deference that would apply to the review of a trial court's ruling based on its superior ability to resolve *factual* questions (e.g., the credibility of witnesses appearing before it) is unwarranted. The facts being undisputed, the question presented on appeal is a question of law, and we review such questions de novo." (*In re Zepeda* (2006) 141 Cal.App.4th 1493, 1497 (*Zepeda*).)

"Prisoners are entitled to minimal due process safeguards in disciplinary matters involving the possible loss of early release credits." (*In re Rigsby* (2019) 38 Cal.App.5th 1011, 1016–1017, citing *Wolff v. McDonnell* (1974) 418 U.S. 539, 558.) "[D]ue process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." (*Superintendent, Mass. Corr. Institution v. Hill* (1985)

4

472 U.S. 445, 457)  The " 'some evidence' " standard of review is "extraordinarily deferential."  (*Zepeda*, *supra*, 141 Cal.App.4th at p. 1498.)  "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  (*Hill*, at pp. 455-456.)

"Conspiracy ' "is an . . . offense, the essence of which is an agreement to commit an unlawful act." ' [Citation.]  This crime has four elements:  (1) the existence of an agreement between at least two persons; (2) the specific intent to agree to commit an offense; (3) the specific intent to commit the offense that is the object of the agreement; and (4) an overt act in furtherance of the conspiracy, which may be committed by any conspirator.  [Citations.]"  (*People v. Ware* (2022) 14 Cal.5th 151, 163.)  "The circumstances from which a [conspiratorial] agreement may be inferred include 'the conduct of defendants in mutually carrying out a common illegal purpose, the nature of the act done, the relationship of the parties [and] the interests of the alleged conspirators.' "  (*People v. Superior Court (Quinteros)* (1993) 13 Cal.App.4th 12, 20.)

The evidence reviewed by the senior hearing officer -- the rules violation report, incident report, supplemental pharmacist report, and inmate Banks's statements -- do not demonstrate a conspiratorial agreement existed between inmate Banks and the sender. The hearing officer concluded the concealment of the strips and the fact the envelopes were addressed to inmate Banks created an inference that inmate Banks had coordinated the delivery of the strips ahead of time.  But no evidence suggested inmate Banks knew about the concealed strips, solicited the envelopes, communicated with anyone about the envelopes, or had any conduct consistent with the illegal purpose of introducing the Suboxone into the prison.  Nor was there any evidence about the sender or the sender's relationship with inmate Banks such that it would be reasonable to infer an agreement between the two.  Inmate Banks initially raised this concern before the rules violation hearing officer when he asked what evidence established an agreement between the parties; that hearing officer deemed the question irrelevant.  While some evidence does

5

support the conclusion the sender of the envelopes intended to conceal the drugs and targeted inmate Banks, no evidence shows inmate Banks made any agreement with the sender.

The warden contends there must have been an agreement because it does not make sense that the sender would send drugs of this value to a random inmate. This contention fails for two reasons. One, there was no evidence of the value of the Suboxone. And two, establishing the envelopes were targeted, rather than sent to inmate Banks at random, is not the same as establishing inmate Banks agreed to distribute the Suboxone in the prison. The sender may have had any number of positive or negative motives in targeting inmate Banks without his agreement. There is simply inadequate evidence to show inmate Banks's agreement to that motive.

We conclude the evidence was insufficient to support the disciplinary finding, so the trial court correctly granted the petition for writ of habeas corpus.

DISPOSITION

The trial court's order granting inmate Banks's petition for writ of habeas corpus is affirmed.

/s/                    
MESIWALA, J.

We concur:

/s/                    
EARL, P. J.

/s/                    
KEITHLEY, J.*

---

\* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.