Filed 2/17/21  P. v. McCoy CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>AARON MC COY,<br><br>　　　Defendant and Appellant. | F079987<br><br>(Kern Super. Ct. No. DF013888A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David Wolf, Judge.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Brook A. Benningson and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P.J., Poochigian, J. and Detjen, J.

## INTRODUCTION

Appellant and defendant Aaron McCoy, a state prison inmate, was convicted of committing offenses in prison and sentenced to serve additional time. In this appeal, defendant argues the court improperly ordered him to pay a restitution fine and other fees without determining his ability to pay such amounts, based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2018, defendant Aaron McCoy was an inmate in Kern Valley State Prison when he committed offenses involving the possession and manufacture of a deadly weapon. At the time, he was serving a sentence for murder (Pen. Code, §187)[1] based on his conviction in 1987 in Sacramento County Superior Court case No. 78299, plus a six-year term for a 1998 conviction in Solano County for violating section 4501, assault with a deadly weapon by a prisoner.

**The complaint**

On November 2, 2018, a complaint was filed in the Superior Court of Kern County charging defendant with two offenses committed on February 2, 2018: count 1, willfully and unlawfully assaulting another inmate, Vincent Solomon, with a deadly weapon or instrument while a prisoner (§ 4501, subd. (a)); and count 2, possession of a weapon, a sharp instrument, by a prisoner (§ 4502, subd. (a)).

As to both counts, it was alleged defendant had three prior strike convictions based on his convictions for murder in 1987; assault with a deadly weapon by a prisoner in 1998; and burglary (§ 459) in 1984 in Sacramento County; and one prior prison term enhancement based on the 1984 burglary conviction.[2]

_____

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] There were also three prior serious felony enhancements (§ 667, subd. (a)) alleged as to count 1 based on the same three prior convictions.

2.

**Plea proceedings**

On July 17, 2019, the court granted the prosecution's motion to amend the complaint to add count 3, manufacturing of a sharp instrument by a state prisoner (§ 4502, subd. (b)).

Thereafter, defendant pleaded no contest to counts 2 and 3 and admitted the prior convictions, pursuant to a negotiated disposition that he would be sentenced to an aggregate term of nine years four months to be served consecutively to the term he was already serving for murder. The aggregate sentence would include the six-year term already imposed for his 1998 conviction in Solano County, and the sentences for counts 2 and 3 would be second strike subordinate terms.

The court granted the prosecution's motion to dismiss count 1 and the accompanying prior serious felony enhancements. The court stated that as part of the negotiated disposition, it would dismiss the 1984 and 1998 prior strike convictions and the prior prison term enhancement at the sentencing hearing.

**Sentencing hearing**

On September 11, 2019, the court imposed an aggregate sentence of nine years four months, to be served consecutively to the term he was already serving for murder. Defendant had already been sentenced to six years for his 1998 conviction in Solano County. As for the two new convictions, the court imposed consecutive subordinate second strike terms of one year, doubled to two years (one-third the midterm) for count 2; and eight months, doubled to 16 months (one-third the midterm) for count 3.

The court dismissed defendant's prior strike convictions from 1984 and 1998, and the prior prison term enhancement pursuant to section 1385.

### *Defendant's objections to the proposed fines and fees*

The probation report recommended imposition of the statutory minimum restitution fine, and the statutorily required court security and criminal conviction assessment fees.

At the sentencing hearing, defense counsel objected to the fine and fees recommended in the probation report:

> "[T]he probation report recommends that the Court impose fines and fees in amount of $370 on Count 2 and $70 on Count 3. However, I would ask the Court to consider the *Dueñas* decision and not impose those fines and fees as they relate to [defendant]. Specifically, he is not in a position where he can earn money through a paid work assignment at Kern Valley. He indicates that he is assigned to Kern Valley State Prison. That assignment is not something he has any control over, and he is also assigned the status of closed custody [*sic*].[3] [Defendant] informs me that there are no currently paid inmate laborer positions available except for PIA, which stands for Prison Industry, and then something starting with A, possibly Authority.[4] And that in order to work with PIA, he needs to be at least minimum custody. He's closed custody, so he's not eligible for a paid work assignment. Based on that, he's asking the Court not impose those fines and fees *because he doesn't have any ability to earn*." (Italics added.)

The court responded to defendant's motion as follows:

> "I am going to order $40, which is the minimum [fee] under … Section 1465.8, $30 pursuant to Government Code Section 70373. The restitution fine under [section] 1202.4(b) can be as high as $10,000, sir. I'm going to give you the statutory minimum of $300. I will suspend $300 pursuant to [section] 1202.45 subject to parole or post-release supervision revocation proceedings. I'm aware of the *Dueñas* case. The woman in the *Dueñas* case had a debilitating disease. I believe it was Cerebral Palsy, and she was unable to work whether there was work available or not because of her medical condition made it impossible for her work. She was unable to pay her fines and fees and was sent to jail in, sort of, a never ending loop of can't pay, go to jail, which is similar to a debtor's prison, which the United States does not have. It is not exactly applicable in [defendant's] position. *He's currently unable to work because he's picked up 115*[5] *violations,*

---

[3] As we will explain below, "close custody" is an inmate custody designation. (Cal. Code, Regs., tit. 15, § 3377.1, subd. (a).)

[4] The Prison Industry Authority (PIA) is part of the California Department of Corrections and Rehabilitation (CDCR) and operates various enterprises that pay inmates for their labor. (§ 2800; *Burleson v. State of California* (9th Cir. 1996) 83 F.3d 311, 312.)

[5] A CDC 115 rules violation report documents an inmate's serious misconduct that

*which are under his control and it is not a heart attack, stroke, cancer or disease. And if he behaves, he can get himself out of that situation, and he will be able to work. In addition, he's able to earn or get money on his books.* So if you do become disabled in the future, heaven forbid by the disease, cancer, or you get an injury, let the Public Defender's Office know, and we can address that again in the future." (Italics added.)

For counts 2 and 3, the court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and stayed the parole revocation fine of $300 (§ 1202.45); and imposed total court security fees of $80 (§ 1465.8) and criminal conviction assessment fees of $60 (Gov. Code, § 70373).

## DISCUSSION

Defendant argues this court must vacate the fees and assessments, and stay the restitution fine, until the superior court conducts a hearing and determines he has the present ability to pay as required by due process as explained in *Dueñas.* Defendant asserts he was "undisputably indigent," and the trial court did not rely on any evidence to find he had the present ability to pay. Instead, the court "improperly speculated that [he] would become able to pay the fines and fees. When it imposed the fine and assessments, the court similarly overlooked the fact that [he] had already been determined to be an indigent person when counsel was appointed."

*Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[6]

<hr>

is a violation of law or otherwise not minor in nature. (Cal. Code Regs., tit. 15, § 3312, subd. (a)(3); *In re Gray* (2007) 151 Cal.App.4th 379, 389; *In re Rigsby* (2019) 38 Cal.App.5th 1011, 1014.)

[6] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

We disagree with the holding in *Dueñas* and find the matter need not be remanded on this issue. As explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

In any event, even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and, as we will explain, find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fines and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *Aviles, supra*, 39 Cal.App.5th at pp. 1075–1077; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031.)

### *Close custody status*

Defendant argues the court violated his due process rights under *Dueñas* when it ignored his attorney's statements that he did not have the ability to pay because he could not get a prison job based on his classification status. Defendant complains that once his attorney objected, the court should have conducted a full hearing on his ability to pay consistent with *Dueñas*'s due process analysis. Defendant asserts the court improperly overruled his objections by speculating that he could improve his behavior to obtain a less restrictive classification, get a prison job, and pay the fine and fees from his future earnings.

At the sentencing hearing, defense counsel objected to defendant's ability to pay because he could not get a paid work assignment based on his classification status as "closed [*sic*] custody" at Kern Valley State Prison at that time. While counsel did not further explain, it appears he was referring to CDCR's inmate security classification

6.

system, which assigns a custody designation to each prisoner. (Cal. Code, Regs., tit. 15, § 3375.) CDCR's designations, beginning with the most restrictive, are maximum custody, "close custody," medium custody A or B, and minimum custody A or B. (Cal. Code Regs., tit. 15, § 3377.1, subd. (a).)

An inmate may be designated for close custody for several reasons, including a lengthy sentence, history of escape, detainer for an offense with a possible penalty of 50 years or more, a serious disciplinary history, and security concerns. (Cal. Code, Regs., tit. 15, § 3377.2, subd. (b).)

An inmate designated for close custody shall be housed in units designated as Levels II, III and IV that are "within an established facility security perimeter." (Cal. Code Regs., tit. 15, § 3377.1, subd. (a)(2)(A).) Inmates designated as close custody require "direct and constant" staff supervision. (*Id*., subds. (a)(2)(C) & (a)(2)(D).) "Close Custody inmates shall be permitted to participate in program assignments and activities scheduled" in "areas located within the facility security perimeter," during limited and specific time periods that shall not be extended unless the Warden determines "visibility is not compromised in areas located within the facility security perimeter." (*Id*., subd. (a)(2)(B).)

An inmate may be considered for redesignation from close custody to a lower level after serving a period of time without serious disciplinary violations. (Cal. Code Regs., tit. 15, § 3377.2, subd. (a)(1).)

In this case, the court rejected defense counsel's objection based on defendant's close custody status by correctly observing that defendant was not in the same situation as the probationer in the *Dueñas* case, and was unable to work based on his accumulation of "CDC 115" rule violations.

Defendant asserts that given his close custody designation, he lacked the ability to pay based on his "present" situation, and the court improperly relied on the possibility that he could obtain a prison job. However, " ' "[a]bility to pay does not necessarily

7.

require existing employment or cash on hand." [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

As for defendant's inability to presently obtain a prison job, we believe *People v. Potts* (2019) 6 Cal.5th 1012 (*Potts*) is persuasive on this point. The trial court in *Potts* ordered a defendant convicted of capital murder to pay the statutory maximum restitution fine of $10,000, partially based on the probation officer's erroneous statement that a condemned inmate would be assigned a job in prison. At the time of the hearing, the applicable restitution statute permitted the court to consider the defendant's inability to pay but the defendant did not object. (*Id.* at p. 1055.) The defendant filed a postjudgment motion for the court to reduce the fine because of the court's mistake and his inability to pay and argued his own source of income in prison was limited to small financial gifts from family and friends. The court denied the motion and found that seizing even a small part of the defendant's income was a minimal burden considering the incredible loss he inflicted to the victim's family. (*Id.* at pp. 1055–1056.)

*Potts* held the trial court abused its discretion when it imposed the fee based on the erroneous belief that a defendant sentenced to death would be permitted to work. However, *Potts* held the error was harmless beyond a reasonable doubt based on the court's findings when it denied the postjudgment motion to modify the fine. (*Potts, supra*, 6 Cal.5th at pp. 1055, 1056.) *Potts* explained that the defendant's alleged inability to pay because he lacked a prison job would be "blunted by the fact that he would retain at least some of the money sent to him" by family and friends. (*Id.* at p. 1056.) The trial court was "permitted to conclude that the monetary burden the restitution fine imposed

8.

on defendant was outweighed by other considerations," such as the seriousness and gravity of the offense, and the circumstances of its commission. (*Id.* at pp. 1056–1057.)

There is nothing in the record to show that defendant in this case would be unable to satisfy the minimum restitution fine and the mandatory fees imposed by the court while completing his aggregate prison sentence, which was imposed consecutive to the term he was already imposing for his 1987 murder conviction, even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *Potts, supra,* 6 Cal.5th at pp. 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

### ***Section 987.8***

Defendant also argues the court's imposition of the fine and fees was inconsistent with the fact that he was not ordered to reimburse the costs of appointed counsel pursuant to section 987.8. Defendant argues it is "illogical to assume" that he had "no reasonably discernable future financial ability to reimburse defense costs" under section 987.8, but he had the ability to pay the restitution fine and fees imposed in this case.

Section 987.8, subdivision (b) states that if a defendant was provided legal assistance, the court may, after notice and a hearing, "making a determination of the present ability of the defendant to pay all or a portion of the cost thereof." For purposes of this statute, the defendant's " 'ability to pay' means the overall capability of the defendant to reimburse the costs, or a portion of the costs, of the legal assistance provided," and includes but is not limited to the defendant's "present" financial position, and his "reasonably discernible future financial position during the following six months." (§ 987.8, subds. (g)(2)(A), (g)(2)(B); *People v. Rodriguez* (2019) 34 Cal.App.5th 641, 646.)

9.

"But there's an important exception:  If the defendant is sentenced to prison or to county jail for more than 364 days, he 'shall be determined not to have a reasonably discernible future financial ability to reimburse' defense costs '[u]nless the court finds unusual circumstances.'  [Citation.]  [¶]  Put another way, there is 'a presumption under the statute that a defendant sentenced to prison does not have the ability to reimburse defense costs.'  [Citation.]  To rebut this presumption, there must be 'unusual circumstances.'  [Citation.]"  (*People v. Rodriguez, supra,* 34 Cal.App.5th at p. 646; § 987.8, subd. (g)(2)(B).)

As relevant to this case, there is no evidence that defendant was notified that the court was going to consider an order to reimburse defense costs, and the court did not address section 987.8 at the sentencing hearing.  Nevertheless, section 987.8 carries a specific statutory presumption that a defendant sentenced to more than one year in prison does not have the ability to reimburse defense costs.  Such a statutory presumption does not apply to whether he had the ability to pay the statutorily mandated restitution fine and fees.  (See *Aviles, supra*, 39 Cal.App.5th at pp. 1074–1075.)

## DISPOSITION

The judgment is affirmed.